IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRON WORKERS' MID-AMERICA PENSION PLAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| vs. | ) ) | NO. 22 C 0196 |
| VEI SOLUTIONS, INC., an Illinois corporation, | ) ) ) | JUDGE ELAINE E. BUCKLO |
| TRANQUILINO R. VENTURA, an individual, | ) ) ) ) | |
| Defendants. | ) | |

## APPENDIX TO PLAINTIFFS' 56.1 STATEMENT

| Ex. # | Document | Bates # |
|---|---|---|
| 1 | Affidavit of Paul E. Flash | 2-5 |
| 2 | Iron Workers Local 63 Collective Bargaining Agreement | 6-62 |
| 3 | International Iron Workers Collective Bargaining Agreement | 64-70 |
| 4 | Promissory Note signed by Tranquilino R. Ventura | 72 |
| 5 | Defendant Ventura's Answer to Plaintiffs' First Amended Complaint | 74-80 |
| 6 | Plaintiffs' First Requests to Admit | 82-84 |
| 7 | Defendant Ventura's motion for an extension of time to respond to discovery | 86-95 |
| 8 | June 27, 2022 Court Order granting Ventura's motion for an extension and giving 30 days leave to find new counsel | 97 |
| 9 | Default Judgment Order against VEI | 99-103 |
| 10 | Illinois Secretary of State Report for VEI Solutions, Inc. | 105-107 |

I:\MIDJ\VEI Solutions\#29758\56.1 index.rla.wpd

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRON WORKERS' MID-AMERICA PENSION PLAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| vs. | ) ) | NO. 22 C 0196 |
| VEI SOLUTIONS, INC., an Illinois corporation, | ) ) ) | JUDGE ELAINE E. BUCKLO |
| TRANQUILINO R. VENTURA, an individual, | ) ) ) | |
| Defendants. | ) | |

## <u>**AFFIDAVIT**</u>

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF COOK | ) |

PAUL E. FLASCH, first being duly sworn upon his oath, deposes and says:

1.    I am now, and, at all relevant times, have been employed by the Trustees of the Iron Workers' Mid-America Pension Plan and Iron Workers' Mid-America Supplemental Monthly Annuity (SMA) Fund, as Administrative Manager, and in such capacity, I have personal knowledge of the matters hereinafter set forth and if called as a witness in the instant proceedings I am competent to testify in respect thereto.

2.    Among my responsibilities and duties, I am charged with keeping and maintaining

records of contributions received by the Plaintiffs from participating employers, maintaining individual records on each person, firm, and corporation required to make contributions to the Plaintiff Funds, receiving and recording contributions reports made by such persons, firms, or corporations, and have under my supervision and direction all books, records, documents and papers relating to such Plaintiffs Funds, and have been delegated the authority by all other Plaintiffs to coordinate and supervise the recovery of delinquent employer contributions on their behalf, receiving thereby access to all necessary information.

3. Plaintiffs, Iron Workers Mid-America Pension Plan and the Iron Workers Mid-America Supplemental Annuity Fund ("Funds"), are jointly trusteed employee benefit trust funds providing pension benefits to their participants. The Mid-America Funds are administered at 2350 East 170th Street, Lansing, Illinois.

4. At all relevant times, Defendant VEI was bound to a collective bargaining agreement with the International Association of Architectural, Ornamental and Reinforcing Ironworkers and with Architectural and Ornamental Union Local 63, AFL-CIO.

5. Under its collective bargaining agreements, VEI was required to file monthly reports and pay fringe benefit contributions to the Funds at specified rates, paid based on the hours worked by covered employees.

6. I have examined the account of Defendant in the above-entitled cause and state that Defendant failed to timely submit the contributions and liquidated damages for May 2021 and June 2021 in an amount totaling $121,266.45.

7. To address Defendant's failure to timely submit completed monthly remittance forms

Appendix 000003

and contributions to Plaintiffs for work in Local 63's jurisdiction for May 2021 and June 2021, VEI and Defendant Ventura entered into a Promissory Note with the Funds on August 4, 2021.

8.   Under the Note, an express condition of VEI being allowed time to pay was that it "will make timely payment of all contributions due . . . for July 2021 forward." The Note also provides that Defendant Ventura would be personally liable for any unpaid amounts due under the Note, stating in relevant part: "By executing this Note, I agree that the above amount is due and owing to the Funds under the applicable collective bargaining agreements. To secure the payment of said amounts, I agree to be personally liable for any unpaid amounts."

9.   Defendants submitted a down payment of $24,253.29 with the Note and agreed to pay the balance of $97,013.16 by July 15, 2022, and to remain current with the timely submission of monthly fringe benefit contribution reports and the payment of any contributions due thereon.

10.   Defendant breached the Note by failing to timely remit its contributions for November 2021 and by failing to pay the total balance owed by July 15, 2022.

11.   To date, the company has submitted five payments to the Funds towards amounts due under the Note, totaling $39,697.09, leaving a balance due under the Note of $57,316.07.

12.   I am duly authorized by Plaintiffs in this behalf, have personal knowledge of the matters set forth above, and if called as a witness in this cause I am competent to testify thereto.

13.   I make this Affidavit in support of the application of Plaintiffs for entry of summary judgment in Plaintiffs' favor and against Defendant Ventura.


FURTHER AFFIANT SAYETH NOT.


3

Appendix 000004

_____

PAUL E. FLASCH

SUBSCRIBED AND SWORN
TO before me this 30
day of August, 2022

_____
NOTARY PUBLIC

OFFICIAL SEAL
JOSEPH P BURKE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/23

I:\MIDJ\VEI Solutions\#29758\flasch affidavit for msj.rla.wpd

Appendix 000005

# EXHIBIT 2



# *(handwritten)* # 11397

## MEMORANDUM OF AGREEMENT

THIS ACCEPTANCE AGREEMENT made and entered into by and between VEI Supply, Inc. (d.b.a. VEI Corporation) _____ (hereinafter referred to as "Employer") and ARCHITECTURAL AND ORNAMENTAL IRON WORKERS UNION LOCAL #63, AFL-CIO (hereinafter referred to as "Union").

In consideration of the mutual promises made to each other, the parties hereby agree as follows:

1.  The undersigned Employer has examined the collective bargaining agreement (the "Agreement") currently in effect between ARCHITECTURAL AND ORNAMENTAL IRONWORKERS UNION LOCAL#63, AFL- CIO and the IRON LEAGUE OF CHICAGO, INC. (the "Association"). The Employer hereby accepts-and becomes bound as a party to the Agreement in its entirety, which is incorporated by reference as if set forth fully herein. The Employer further agrees to be bound by any subsequent successors, renewals, amendments, modifications, replacements and addenda to the Agreement unless this acceptance agreement is timely terminated in accordance with the provisions below. The Employer agrees that the Union's notice to the Association of intent to terminate, open or modify the underlying Agreement shall be considered as notice to the undersigned.

2.  This acceptance agreement may be terminated by either party giving written notice of termination to the other by registered letter not less than four months prior to the current expiration date of the underlying Agreement, its successor or renewal, such termination to become effective as of the applicable expiration date.

3.  The Employer agrees to pay the amounts of the contributions which it is bound to pay to the several fringe benefit funds described in the Agreement and agrees to and is hereby bound by and considered to be a party to the Agreements and Declarations of Trust creating each of said trust funds, together with any restatements or amendments thereto which have been or may be adopted, as if it has been a party to and, signed the original copies of the trust instruments. The Employer ratifies and confirms the appointment of each of the Employer Trustees, who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declarations of Trust, and where applicable, jointly with an equal number of trustees representing employees, carry out the terms and conditions of the trust instruments.

4.  The Employer hereby recognizes the Union as the Collective Bargaining Representative of all the Employees covered by this Agreement. Further, the Union has requested recognition from the Employer as the exclusive bargaining representative of the employees described in the Agreement incorporated by reference herein under Section 9(a) of the National Labor Relation Act. The Union has submitted proof of its 9(a) status in the form of signed and dated authorization cards, and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described in the Agreement incorporated by reference herein. Accordingly, the Employer hereby recognizes the Union as the exclusive collective bargaining representative of its employees on all present and future job sites within the jurisdiction of the Union. Such status shall continue until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by the employees.

IN WITNESS WHEREOF, the parties have executed this agreement the ___23rd__ day of ___April_____ ,20_14_ .

EMPLOYER:                                    ARCHITECTURAL AND ORNAMENTAL
                                             IRON WORKERS UNION LOCAL #63

By: _Tranquilino Ryan Ventura_               By: _____
        (Signature)

_Tranquilino Ryan Ventura_                   _BUSINESS MANAGER, FST_
        (Printed)                                    (Title)

_Executive Vice-President_
        (Title)

_105 W Adams St Ste 2312_
        (Address)

_Chicago, IL 60603_
        (City, State, Zip)

_(312) 985-6840_
        (Phone)

_(312) 985-0275_
        (Fax)





# MISCELLANEOUS AGREEMENT

**BETWEEN**

**IRON LEAGUE OF CHICAGO, INC.**

**and**

**ARCHITECTURAL AND ORNAMENTAL**

**IRON WORKERS' UNION, LOCAL NO. 63**

**of the**

**INTERNATIONAL ASSOCIATION OF**

**BRIDGE, STRUCTURAL, ORNAMENTAL**

**AND**

**REINFORCING IRON WORKERS**

**(AFL-CIO)**

**JUNE 1, 2021 TO MAY 31, 2024**



INDEX

|  | Article | Page |
|---|---|---|
| Apprentices | 9 | 17 |
| Apprenticeship Fund | 19 | 30 |
| Bargaining Unit | 1 | 1 |
| Breaks | 11 | 20 |
| Business Representative | 16 | 27 |
| Certification of Welders | 14 | 24 |
| Change of Business Operation | 14 | 25 |
| Defined Contribution Plan | 19 | 30 |
| Discrimination | 14 | 25 |
| Dismissal | 14 | 25 |
| Drinking Water | 14 | 24 |
| Drug Free Workplace Policy | 26 | 43 |
| Duration and Termination | 31 | 47 |
| Employers Obligation | 17 | 27 |
| Enforcement | 7 | 15 |
| Equal Employment Opportunities | 14 | 24 |
| Fabrication | 14 | 24 |
| Foremen | 8 | 16 |
| Health & Welfare | 19 | 29 |
| Hours of Labor | 10 | 18 |
| Industry Advancement Fund | 19 | 30 |
| Injuries | 20 | 34 |
| Insurance | 24 | 38 |
| Job Steward | 23 | 37 |
| Jurisdictional Disputes | 3 | 6 |
| Layoff After Working Hours | 10 | 19 |
| Leasing Equipment | 14 | 25 |
| Letter of Assignment | 14 | 26 |
| Letter of Past Performance | 14 | 26 |
| Loss of Tools or Clothing | 13 | 23 |
| Maintenance of Equipment | 22 | 37 |
| Miscellaneous Provisions | 14 | 23 |

|  | Article | Page |
|---|---|---|
| Out of Town | 17 | 28 |
| Overtime and Holidays | 11 | 19 |
| Overtime | 11 | 21 |
| Parking Fee | 17 | 27 |
| Pay Day | 12 | 21 |
| Pension | 19 | 30 |
| Piecework | 14 | 23 |
| Political Action League | 30 | 45 |
| Power Tools | 13 | 23 |
| Recognition | 2 | 6 |
| Referral Facility | 6 | 9 |
| Safety | 22 | 36 |
| Safety Equipment | 13 | 22 |
| Saving Clause | 27 | 43 |
| Scope of Agreement | 29 | 44 |
| Settlement of Disputes | 28 | 43 |
| Shift Work | 18 | 28 |
| Show Up Time | 10 | 18 |
| Storage Facility | 13 | 23 |
| Sub-Contracting | 21 | 35 |
| Territory | 4 | 7 |
| Time In and Out | 10 | 19 |
| Tool Crib | 14 | 26 |
| Tools | 13 | 22 |
| Transfer of Tools | 17 | 28 |
| Truck Driving | 17 | 28 |
| Union Assessment Check-Off System | 25 | 39 |
| Union Security | 5 | 8 |
| Wages | 7 | 13 |
| Wage & Welfare Bond | 15 | 26 |
| Working Rules | 26 | 39 |
| Work Limitation | 13 | 24 |

Appendix 000010

# AGREEMENT BETWEEN IRON LEAGUE OF CHICAGO, INC.
### and
### ARCHITECTURAL AND ORNAMENTAL
### IRON WORKERS' UNION, LOCAL NO. 63
### of the
### INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS (AFL-CIO)

THIS AGREEMENT is made and entered into this 1st day of June, 2021, by and between: IRON LEAGUE OF CHICAGO, INC., for and on behalf of its member companies and other companies whose names are set forth in Exhibit A attached hereto and forming a part of this Agreement, each of which is hereinafter referred to as the "Employer", and ARCHITECTURAL AND ORNAMENTAL IRON WORKERS' UNION, LOCAL NO. 63 of the International Association of Bridge, Structural, and Ornamental and Iron Workers (AFL-CIO), hereinafter referred to as the "Union." Subject to the provisions of Article 31, this Agreement shall be in full force and effect through May 31, 2024.

### ARTICLE I
### Bargaining Unit

1.1 Bargaining Unit shall consist of all employees engaged in field fabrication, production, erection, and construction covered by the occupational jurisdiction of the Union and customs of the trade including, but not limited to, the distributing, erection, installation, removal, uncrating and recrating, unloading and reloading, relocation, repair, maintenance, layout, removal, replacement, handling, cutting, bending, wrecking, dismantling, rigging, job site fabrication, framing, drilling, tapping, mixing, incidental building of

scaffolding, welding by acetylene and electric machines and welding by combination of various gases and electricity; and construction of all iron, steel, ornamental lead, bronze, brass, copper, aluminum, all ferrous and non-ferrous metals; precast, prestressed and poststressed concrete structures; agitators; air ducts; application of all sealants such as Thiokol, Neoprene and similar types of plastic sealants used to seal metal to metal surfaces, access doors and frames, air conditioner cans, amusement equipment, anchors, aprons, aqueducts, atriums, awnings, backstops, baffle frames, baffle plates, bank fixtures, bar joist, bells, bi-fold doors, blast furnaces, bleachers, boat borings and piers, boilers (sectional water tube and tubular), bollards, book stacks, agents and ticket booths, boxes, bracing, brackets, bridges, bridge rail, bucks, all plastic building products supplementing metal shapes and structural members, bumpers, bumper posts, bunkers, cableways, cable slots, cable wells, caissons, cages, canopies, walkway canopies, unistrut canopies, caps, cardox, car ports and enclosures, car lift fronts, cast tilting, catwalks, caulking backing (fillers and synthetics), cells, chain link fabric, chain fence, chain link fence, clips, clocks, cofferdams, collapsible gates, collars column casings, column covers, composite products of all types, concentrators, conveyors, coolers, coping, corbels, corrugated sheets, when attached to steel frames, counter supports, conservatories, cranes (the erection, installation, handling, operating, and maintenance on all forms of construction work), crushers, cupolas, curb guards, curtains, curtain wall, curtain wall components, draw curtains, stage curtains and rigging, dams, decking (metal), roof decking (such as "Cofar" and similar type materials, as well as "Trusdeck, Mahon" M deck and other dual purpose type roof deck), decorations and displays, demolition, derricks, directory boards, room dividers, docks, dock levelers, domes, doors, access panels lead doors and frames, dredges,

drums, duct and trench frames and plates, dumb waiter enclosures and fronts, dumpers, elevator cars, elevator fronts and enclosures, elevator dust covers and fascia, enamel tanks, enamel vats, escalators, escalator trim approaches and subframing, ETFE (ethylene tetraflouroethylene) systems in its entirety, expanded metals, expansion joints, erection, rigging or dismantling of all false work, fans, fascia panels, fencing, fiberglass and/or plastic substitutes of any shape used in place of steel or aluminum, fins, fire doors in metal frames, fire escapes, fire equipment, fire breaks and fire stops, fire curtains, flag poles, flagging, floor construction and flooring, floor plates, flumes, folding glass walls, frames, frames in support of boiler, fronts, fur rooms, assembling, erection and handling of metal furniture, galleries, modular and standard, metal gates or barbed wire and all other types of fence materials erected on other structures and foundation work, glazing of raw glass, glass, glass fence, glass stops, grab bars, grills, grill work, greenhouses, green screen, guard cable, guard houses, guard rails, gymnasium equipment, hangars, hanging ceilings, highway delineates and reflectors (metal or synthetic), highway safety divides, highway signs and markers, highway metal plate guard rail, hoppers, hospital room T.V. supports, hospital room gas supports, inclines, inserts, insulation related to our work, insulation of all types and applications, integrated curtain wall systems, iron doors, jail cells and jail cell maintenance and operators, jail cell beds, benches, bunks, chairs, tables, mirrors, security ceilings, jail cell access doors, kalomeined doors, kick plates, kilns, kinetic walls, ladders, letters and numerals, lightweight metal framing, light supports, lintels, lock and dam gates, lockers, locks, locksmithing, louvers, machinery (moving, hoisting, lowering and placing on foundations), magnetic walls, mail chutes and boxes, making and installation of all articles made of wire, marquees, material stored in field such as: framing,

cutting, bending, drilling, burning and welding by acetylene gas and electric machines; metalizing, metal curtain wall (prefabricated, cut-to-fit in field and preglazed), metal drum barriers, metal floor decking; metal forms and false works pertaining to concrete construction, metal windows and enclosures, metal studs, mixers, modular buildings, monorails, monitor supports, museum exhibits, multi-plate, name plates, nosings, numerals, operating devices, operating and dental room light equipment, ornamental iron fence, oxygen and gas pipe supports, ovens, pans, panic bar devices and locks, panels (insulated and non-insulated, factory and field assembled), Q-panel, any type panel pertaining to curtain-wall whether it be stone, aggregate or precast, partitions, toilet partitions and supports, pedestrian walkway canopies and covers, pedi mats, peep hole slots, pen stocks, perforated panel, perforated-wall system, photovoltaic walls, pile drivers, pipe railing, plaques, plank seating, plastic and synthetic fences, platforms, plates, playground equipment, poles, poster frames, porch supports, porcelain enameled panels, posts, precast concrete fencing (permanent and temporary), precast stairs, prefabricated metal buildings, preglazed windows, preglazed architectural wall units, storefront, and window walls, pulverizers, racks and metal storage rack systems, radiator enclosures, railings (including pipe), glass railing of any type, railroad bridgework and maintenance, rain screen and supports, reservoirs, retractable walls and doors, rigging (including shipyards, navy yards, vessels and government departments), rolling grills and shutters, roofs, roof hatches, mansard roofs, space roof systems, safety deposit box fronts and trim, safe deposit vents, safes, safe equipment (night depositories and drive-up equipment), sash and preglazed sash, scaffolding, scenery equipment, scoreboards and supports, screen, screen wall system, sculptures and art objects, scum boards, seats, seating and plank seating, sheet

metal or fence departments), framework, security ceilings, sheet piling, shelving, shoring, sidewalk and vault lights, sills and sill plates, signs, skate wheels, skid steer (lull), skip hoists, skylights, skylight support steel, slides, slope wall, smoke conveyors, smoke plates, snow fence, soffits, solar panels, solar screens, sound walls, space frames, spandrels, stabilizer bars, metal and precast concrete spillways, statues, stacks, stacker cranes, stadium seating, stage equipment and counterweight systems and rigging for asbestos curtain, stairs, stairway and spiral stairs, specialty items historically fabricated by fence and iron contractors and any other associative work in its totality, steel and fire proof curtains, storefronts and entrances, stokers, storage rooms, stoves, subways, sun shades, supports steel for signs, swimming pool equipment, tables, tanks, target ranges, target range baffles, booths, and conveyors, temporary fencing, tents, thimbles, thresholds, tight lacing or metal strips for decorative or protective purposes on fencing, towers, tracks, track frames, tracks and guides, tracks and supports, tramways, transfer validating and transfer issue machines, trash disposals, trash compactors, travelers, traveling sheaves, trellises, trim on vaults, trusses (steel, Howe and combination), tunnels, turnstiles, Unistruts, vanity support steel, vats, vault doors, vaults, ventilators, vertical hydraulic elevators, vessels, viaducts, wall tires, wainscoting, waste compactors, weather stripping, weather vanes, weirs and weir plates, wheel guards, winches, wind screen and supports, window walls, windows, window washing hooks, window and door screens, brackets and guards, window stools, wickets, wire mesh, windows washer track, wire work, wrecking and dismantling all of the above and all housesmith work and submarine diving in connection with or about same, all layout work for the above regardless of equipment needed to perform operations, all work in connection with erecting, fixing, operating, maintaining all

equipment used in the performance of the above listed work, and all labor involved in water and wind testing of windows and curtainwall. The above claims are subject to trade agreements and decisions of jurisdictional disputes settling plan of the Building and Construction Trades Department.

## ARTICLE 2
### Recognition

2.1 The Employer recognizes the Union as the sole and exclusive bargaining representative for the employees, now or hereafter employed in the Bargaining Unit for the purpose of collective bargaining in respect to pay, wages, hours of employment or other conditions of employment. All work within the trade jurisdiction of the Union which the Employer undertakes to perform with its employees shall be performed by employees covered by this Agreement.

## ARTICLE 3
### Jurisdictional Disputes Over Craft Jurisdiction

3.1 This Agreement covers all field erection and construction work traditionally performed by and coming under the jurisdiction of the Association. The Employer recognizes that the claimed scope of work covered under this Agreement by the Association is that provided for but not limited to the jurisdictional claims contained within the charter grant issued by the AFL to the Association and contained in Article 4 of the Association's Constitution.

3.2 Agreements, National in Scope between Iron Workers International Association and other International Unions covering work jurisdiction and allocation and division of work among employees represented for the purpose of collective bargaining by such labor organizations, shall be respected and applied by the Employer.

Appendix 000016

6

3.3 The Standard Agreement of the Construction Employers' Association and the Chicago and Cook County Building and Construction Trades Council is hereby made a part of this Agreement, provided, however, that in the event of any conflict or ambiguity with respect to said Agreement and this Agreement, the provision of this Agreement shall prevail and apply.

3.4 The foregoing Section 3.3 shall remain in full force and effect until such time as all other Employers in the construction industry having agreements with the Iron Workers Union, and all other unions affiliated with the Building and Construction Trades Department, have signed a stipulation to be bound by the terms of the Agreement and decisions of the Impartial Jurisdiction Disputes Board.

3.5 In the event of any dispute as to the jurisdiction of work covered by the terms of this Agreement being claimed by unions other than those affiliated with the Building and Construction Trades Department, AFL-CIO then such dispute shall be referred to the International Unions involved, for determination by the International Unions in any given jurisdiction determination shall be implemented immediately by the individual Employer involved.

There shall be no strikes, work stoppages, or other interferences with the work by reason of jurisdictional disputes.

### ARTICLE 4
### Territory

4.1 The territory covered by this Agreement shall be the territorial jurisdiction of Local No. 63, which is as follows:

ON THE NORTH – Wisconsin State Line

ON THE NORTHWEST – From County Line on Route 53, follow Cook County Line to McHenry County, West of Ka... County Line to Route ..., North on Route

Appendix 000017

7

31 to Route 14, Northwest on Route 14 to Route 47 to Wisconsin Line. Territories East of these Routes belong to Local No. 63.

ON THE WEST – Illinois Route 53 from Cook County Line South to 31st Street, then East on 31st Street to Eastern City limits of Downers Grove, South on Fairview Avenue onto Route 55, then East on 91st Street to Clarendon Hills Road, South on Line with Clarendon Hills Road to Cook County Line.

ON THE SOUTH AND SOUTHWEST – Will County Line

ON THE SOUTHEAST – Indiana State Line

## ARTICLE 5
### Union Security

5.1 All employees now included in the Bargaining Unit represented by the Union and having a membership therein must, during the term hereof, as a condition of employment, maintain their membership in the Union.

5.2 All other employees covered by this Agreement shall, as a condition of employment, become members of the Union after the seventh day of but not later than the eighth day following the beginning of such employment, or the effective date of this Agreement, whichever is later, and they shall maintain such membership as a condition of continued employment as hereinafter provided.

5.3 Any employee who refuses or fails to become a member of the Union or refuses or fails to maintain his membership therein in accordance with the provisions of Section 1 and 2 of the Article shall forfeit his right of employment, and the Employer shall, within three (3) working days of being notified by the Union in writing as to the failure of an employee to join the Union or to maintain his membership therein, discharge such employee. For the purpose of the requirements of membership

Appendix 000018

8

and maintaining membership shall be in accordance with State and Federal Laws. The Employer shall not be in default unless he fails to act within the required period after receipt of written notice.

5.4 The Employer agrees to advise the employee of the provisions of this Article provided the Employer is notified in advance of the Union's initiation fees and dues.

5.5 Any covered employee who substantially controls or has the power to substantially control the Employer whether by stock ownership, Relationship, Marriage or otherwise, shall contribute on behalf of said individual. A minimum of 2,000 hours on an annual basis, REGARDLESS of actual hours worked or paid.

## ARTICLE 6
### Referral Facility

In order to maintain an efficient system of production in the industry, to provide for an orderly procedure of referral of applicants for employment and to preserve the legitimate interests of employees in their employment, the Employer and the Union agree to the following plan of referral of applicants to employment:

1. The Employer shall have the right to employ directly a minimum number of key employees who may consist of Foremen and Journeymen. In addition, the Employer shall have the right to employ directly on any job in the locality in which the Employer maintains his principal place of business all employees required on such job or jobs, provided such employees are regular employees of the Employer who have been employed by the Employer fifty percent (50%) of the time during the previous twelve (12) months; and on jobs of the Employer located outside of the locality in which the Employer maintains his principal place of business fifty percent (50%) of

such employees.

2. All other employees required by the Employer shall be furnished and referred to the Employer by the Union.

3. The Employer shall have the right to reject any applicant referred by the Local Union.

4. The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. The selection and referral of applicants shall be operated in accordance with the following plan.

5. The Union shall register all applicants for employment on the basis of the Groups listed below. Each applicant shall be registered in the highest priority Group for which he qualifies.

### GROUP "A"

All applicants for employment who have worked at the trade as a mechanic or Apprentice for the past four (4) years; have previously passed a Journeyman's examination conducted by a duly constituted Local Union affiliated with the International Association of Bridge, Structural and Ornamental Iron Workers qualifying them to work as a mechanic at the trade; have been employed for a period of at least one (1) year during the last four (4) years by Employers (parties to collective bargaining Agreements with the Union), and who have actually resided for the past year within the geographical area constituting the normal construction labor market.

### GROUP "B"

All applicants for employment who have worked at the trade as a mechanic or Apprentice for the past four (4) years; and have previously passed a Journeyman's examination conducted by a duly constituted Local Union affiliated with the

Structural and Ornamental Iron Workers qualifying them to work as a mechanic at the trade.

### GROUP "C"

All applicants for employment who have worked at the trade as a mechanic or Apprentice for the past two (2) years or more and who have for the past year actually resided within the geographical area constituting the normal construction labor market.

### GROUP "D"

All applicants for employment who have worked at the trade for more than one (1) year.

6. The Union shall maintain each of the separate Group lists set forth above which shall list the applicants within each Group in the order of the dates they registered as available for employment.

7. Employers shall advise the Union of the number of applicants needed. The Union shall refer applicants to the Employer by first referring applicants in Group "A" in the order of their places on said list and then referring applicants in the same manner successively from the lists in Group "B", then Group "C", and then Group "D". Any applicant who is rejected by the Employer shall be returned to his appropriate place within his Group and shall be referred to another Employer in accordance with the position of his Group and his place within the Group. Upon a registrant being referred for employment and actually employed on a job more than three (3) days, such registrant's name shall be removed from the list until such time as his employment has been terminated, at which time he shall be registered at the bottom of the appropriate list under which he is entitled to be registered.

If a registrant, upon being referred in regular order, refuses to accept the re

the bottom of the appropriate list under which he is entitled to be registered.

8. The order of referral set forth above shall be followed except in cases where Employers require and call for employees possessing special skills and abilities in which case the Union shall refer the first applicant on the register possessing such special skills and abilities.

9. Apprentices shall be hired and transferred in accordance with the Apprenticeship provisions of the Agreement between the Employer and the Union.

10. In the event that the referral facilities maintained by the Local Union are unable to fill the requisition of an Employer for employees within a forty-eight (48) hour period after such requisition is made by the Employer (Saturdays, Sundays and Holidays excepted), the Employer may employ applicants directly at the job site. In such event the Employer will notify the Local Union of the names and date of such hirings.

11. The Local Union, through its Examining Board, shall examine all job applicants who have not previously passed an examination conducted by a duly constituted Local Union affiliated with the International Association of Bridge, Structural and Ornamental Iron Workers in order to determine whether they are qualified to perform the work of the craft as a mechanic and be eligible for referral. Such examinations shall be held at least every month.

12. In the event that any job applicant is dissatisfied with his Group classification, or his order of referral, or that such applicant claims that he was not placed in the proper Group set forth above or was not referred in the regular order as provided above or if a job applicant has failed in his examination to qualify as an eligible referent, such aggrieved job applicant shall appeal in writing within ten (10) days from the delay on which his complaint arose, or failure to pass his examination, to

Appendix 000022

an Appellate Tribunal consisting of an Employer representative, a Union representative and an impartial Umpire appointed jointly by the Employer and the Union, and the decision of the Appellate Tribunal shall be final and binding.

13. The Employer and the Local Union shall post in appropriate places all provisions relating to the hiring arrangement as set forth in this Agreement.

## ARTICLE 7
### Wages

7.1 The wage scale and fringe benefit contributions shall be as follows:

| EFFECTIVE | 6-1-21 | 6-1-22 | 6-1-23 |
|---|---|---|---|
| | $2.25 raise | $2.70 raise | $2.95 raise |

| | |
|---|---|
| Wages | $52.13 |
| As more fully hereinafter described: | |
| Health & Welfare | $14.23 |
| Defined Contribution | $12.99 |
| Mid America Pension | $9.00 |
| SMA | $2.00 |
| Apprentice Training | $1.25 |
| Industry Advancement | $ .08 |
| 63 Contractor | |
| IMPACT FUND | $ .33 |
| DEDUCTIONS FROM WAGES | |
| Union Working Assessment* 3.75% of gross wage | |
| Iron Workers Local #63 IPAL | .06/hr |
| Retiree Fund | .20/hr |
| General Organizing | .20/hr |
| Vacation Fund | 2.50/hr |

The fringe benefits are to be made using a single check

## Appendix 000023

13

payable to Iron Workers Local No. 63 Fringe Benefit Funds.

Effective June 1, 2021, to May 31, 2022, wages and/or fringe benefits shall be increased by a total of $2.25 per hour and shall be allocated between Wages, Health and Welfare, Pension, SMA, Defined Contribution, Apprenticeship Funds, and Industry Advancement Fund, IMPACT Fund at the option and direction of the Executive Board of the Union.

Effective June 1, 2022, to May 31, 2023, wages and/or fringe benefits shall be increased by a total of $2.70 per hour and shall be allocated between Wages, Health and Welfare, Pension, SMA, Defined Contribution, Apprenticeship Funds, and Industry Advancement Fund, IMPACT Fund at the option and direction of the Executive Board of the Union.

Effective June 1, 2023, to May 31, 2024, wages and/or fringe benefits shall be increased by a total of $2.95 per hour and shall be allocated between Wages, Health and Welfare, Pension, SMA, Defined Contribution, Apprenticeship Funds, and Industry Advancement Fund, IMPACT Fund at the option and direction of the Executive Board of the Union.

*The Amounts shown are subject to deductions under the Union assessment check-off provided for in Article 25 hereof, and Iron Workers Local 63 Political Action League provided in Article 30.

Foreman's Rate: See Article 8.

Anything to the contrary notwithstanding, the Union Executive Board, at its option, may after notice to the Employer, return, eliminate or modify the amount of Apprenticeship Training Fund Contribution being paid by the Employer. Reductions, if any, in the amount of the Apprenticeship Training Fund Contribution as presently provided herein shall be allocated to their fringe benefit funds and shall not alter or reduce the total amount of fringe benefit contributions.

## Appendix 000024

14

**Apprentices in program as of June 1, 2021**

| Apprentice Wage Rate | __% of Journeyman Scale | | |
|---|---|---|---|
| 1st Year | 50% of Journeyman Scale | | |
| 2nd " | 60% " | " | " |
| 3rd " | 80% " | " | " |
| 4th " | 90% " | " | " |

Apprentices will receive a pro-rated amount of the Defined Contribution and SMA via percentage of wage.

**Enforcement**

7.2 The Union shall have the right to inspect the payroll records of the Employer for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages being paid to employees. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Union, to a representative of a certified public accountant designated by the Union. If an audit of such records reveals that the Employer has not violated the provisions contained in this Agreement, the cost of such audit shall be borne by the Union; if the audit reveals violations by the Employer, the cost of the audit shall be borne by the Employer, except in the case of an obvious technical error. If employees are withdrawn from any job in order to compel an Employer to make such books and records available, the employees who are affected by such stoppage of work shall be paid for lost time up to 16 hours provided that two days notice of the intention to remove employees from a job is given to the Employer by the Union by registered mail. Such withdrawal of employees to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

# Appendix 000025

15

# ARTICLE 8
## Foremen

8.1 Whenever 2 or more employees covered by this Agreement are employed, one shall be selected by the Employer to act as foreman. Where there are crews of 2 to 5 men, including the foreman, the foreman's rate of pay shall be $2.50 per hour over the Journeyman's rate of wages. Where there are crews of six men or over, including the foreman, the foreman's rate of pay shall be $3.50 per hour over the Journeyman's rate of wages. The foreman's rate is subject to change consistent with the Union's option under Section 7.1. He shall have the authority to issue instructions, hire or discharge on the job on which he is employed as foreman at the direction of the employer, or due to safety violations. There shall be no limitation on the number of foreman.

8.2 Whenever there are 3 or more foremen and a work force of at least 14 employees (in addition to the foremen) employed by one Employer on one job site, a general foreman shall be employed. Such a general foreman shall not work with the tools of the trade.

8.3 Whenever an employee is assigned to a one man operation for a period of time six hours or less, on any one job, he shall receive the existing wage rate of his classification. Whenever an employee is assigned to a one man operation for a period of time in excess of six hours on any one job, he shall receive foreman's wages and he must first receive permission from a Business Agent or the Business Manager. The foreman's rate is subject to change consistent with the Union's option under Section 7.1. He shall have the authority to issue instructions, and discharge on the job on which he is employed as foreman at the direction of the employer, or due to safety violations. There shall be no limitation on the number of foreman.

8.4 When a contractor comes in from out of town and checks

in with Local #63 to work on a job under our jurisdiction, one of the members referred from our Union will be paid foreman's wages regardless of any other foreman on the job.

# ARTICLE 9
## Apprentices

9.1 The parties signatory hereto agree to establish a Joint Apprenticeship Committee in accordance with the provisions of the "Iron Workers Apprenticeship and Training Standards," as contained in Section 1, Article 21 of the International Constitution. Said Committee shall formulate and operate an Apprenticeship Program in the local area in conformity with said standards.

9.2 It is further agreed that the Employer may employ a maximum of 1 Apprentice for each 2 Journeymen in his employ, and if the Employer has in his employ this ratio of 1 Apprentice for each 2 Journeymen, then the Employer may work 1 Apprentice for each 1 Journeyman on any one particular job provided.

(a) That this ratio (1 Apprentice for each 2 Journeymen employed) be based on current work force and not on annual work force.

(b) That there is a Journeyman on each job working for that particular Employer.

(c) That the Apprentices never outnumber the Journeymen on the job for that particular Employer.

(d) That this ratio (1 Apprentice for each 2 Journeymen employed) is based only on those members that are working in the Territorial Jurisdiction of Local #63 as Ornamental Iron Workers for that particular Employer who has a signed Bargaining Agreement with Local #63.

(e) That the Employer furnish to the Union an accurate list of Local #63 employees upon demand by the Union. Field and

Appendix 000027

17

(f) That Local #63, in following the intent of this interpretation, shall see that Apprentices and/or Journeymen share proportionately employment and unemployment.

(g) Only one Apprentice may be used in any hoisting crew but must be rotated with other Apprentices, subject to availability. It is further agreed that the Employer will employ a minimum of one Apprentice for each seven Journeymen currently employed by the Contractor but not to exceed a maximum of one Apprentice for each two Journeymen.

9.3 Apprentices will receive 4 hours wages for attending classes with proof of attendance. They will receive no benefits for these 4 hours.

9.4 The parties agree that Section 9.3 of this Agreement may be reopened so that the Joint Apprenticeship Committee can recommend adjustments pertinent to the advancement of the Apprenticeship Training Curriculum. A reopener pursuant to this Section only allows the parties to adjust language set forth in Section 9.3, and shall not be construed as a reopener of any other Section of this Agreement.

## ARTICLE 10
### Hours of Labor

10.1 The starting time of the job will be; 6:00 am, 7:00 am or 8:00 am for all employees. An unpaid lunch break of ½ hour will be taken after the 4th hour, but before the 5th hour. Once the starting time has been established, no change shall be made without the approval of the Business Manager for the Union.

### Show-Up Time

10.2 Any employee scheduled to report for work or reporting for work on order of his Employer and not being put to work for any reason shall receive two hours pay provided he remains on the job for that period of time. Any employee

Appendix 000028

18

who works more than two hours but less than four hours shall be paid a minimum of four hours; any employee who works more than four hours but less than six hours shall receive a minimum of six hours pay; and, any employee who works more than six hours, but less than eight hours shall be paid a minimum of eight hours. All time actually worked on Saturday, Sunday, Holidays or before the established start time, or after the established ending time, shall be at a double time rate; and, all other time at a straight time.

The provisions of this Section for 4, 6, or 8 hours pay shall not apply due to conditions beyond the control of the Employer preventing available work from being performed.

## Layoff After Working Hours

10.3 If an employee is laid off after working hours, he shall be paid, in addition to all other wages due him, 2 hours of wages at straight time rate. An electronic direct deposit payment will be made to Employee's account for hours worked by the end of the next working day following a layoff. If an employee refuses direct deposit payments, then a layoff check may be mailed to the Employee, post marked the day following their layoff provided the Employer is not delinquent with current benefits payments and has been in good standing with respect to benefits payments for the previous twelve months.

## Time In and Out

10.4 Time shall begin and end at the storage facility if one is required under the terms hereof and is located no higher than the fourth floor level. Otherwise, time shall begin and end at the ground level of the job site.

## ARTICLE 11
## Overtime and Holidays

11.1 Double time shall be paid for any and all work in excess of eight (8) hours on any regular work day and for all

time worked on Saturdays, Sundays and recognized Holidays; except for rehab work as described in Article

11.1(a). No work shall be performed on Labor Day except to save life or property.

11.1(a) Rehabilitation work is defined as, work performed within existing projects for the purpose of repair or replacement of existing components i.e. stairs, handrails, window sash, and entrances. When employees are asked to work a minimum of one-half hour work, in excess of the regularly scheduled work day, time and one-half (1-1/2) shall be paid for the first two hours of such overtime each day Monday through Friday, and double time shall be paid after such two hour period each day Monday through Friday. Saturdays, Sundays and Holidays shall be paid at double time.

11.2 The following Holidays shall be observed:

(If they fall on a Sunday, the following Monday shall be observed.)

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| Memorial Day | The day after Thanksgiving |
| Fourth of July | Christmas Day |
| Labor Day | |

11.3 The minimum amount of overtime pay shall be thirty (30) minutes.

### Breaks

11.4 Employees shall have a fifteen (15) minute paid coffee break at the work station as follows:

(a) During the morning hours of the work day; and

(b) After ten (10) hours of continuous work; and

(c) After each four (4) hour period following ten (10) hours of continuous work.

# Appendix 000030

20

**Overtime**

11.5 If overtime is necessary and is to run four hours beyond the regular work period, a half-hour may be taken off without pay before starting such overtime.

11.6 If there is overtime work, each person already working on the job as an Architectural Iron Worker shall be given first preference before assignment is made to any other Architectural Iron Worker.

11.7 Employer agrees not to begin overtime work until he has first received permission from the Union Representative.

# ARTICLE 12
## Pay Day

12.1 Employees shall be paid once each week, not later than the end of the established work day, on the regularly established pay day, except in cases of Holidays, in which case they shall be paid on the preceding work day. Employers may withhold, where necessary, a reasonable amount of wages to enable them to prepare the payroll, but not to exceed one week. Any Employer who fails to pay wages or issue payroll checks for wages and such checks are subsequently dishonored, shall be liable for the amount of the check plus an additional amount equal to ten (10%) percent as liquidated damages the first time. The second time there will be a 20% penalty. If Employer fails to have sufficient funds in the bank to meet paychecks issued, he shall thereafter pay in cash and he shall pay in addition to wages due, a sum equal to the costs incurred by Local #63 in collecting same, including attorney fees. Employees will also be reimbursed for all fees on Non-Sufficient Fund checks, plus Personal checks that become N.S.F. due to N.S.F. payroll checks. In addition to regular pay checks, if an Employer offers direct deposit, all employees shall be required to be paid through direct deposit. Unless negotiated upon mutual agreement of

Appendix 000031

21

12.2 The Union is permitted to withdraw its members from Employer for non-payment of wages and/or fringe benefit contributions.

12.3 When employees are laid off, discharged or terminated, they shall be paid in full on the job immediately, and if required to go to some other point or to the office of the Employer, the employees shall be paid for the time required to go to such places. Ample time must be allowed for an employee to pick up his personal belongings. When employees quit of their own accord, they shall wait until the regular pay day for the wages due them.

12.4 Any undue delay or loss of time caused the employees through no fault of their own shall be paid for by the Employer causing such delay, at the regular rate of wages.

12.5 Accompanying each payment of wages shall be a separate statement identifying the Employer, showing the total earnings, the amount of each deduction, the purpose thereof, and net earnings.

## ARTICLE 13
### Tools

13.1 Each employee is required to furnish, for his individual use only, all of those hand tools customarily needed to perform his duties. Any such tools broken on the job, such as drills, taps, hacksaw blades, etc., shall be replaced by Employer at his expense.

### Safety Equipment

13.2 Safety equipment – Employers will furnish safety equipment adequate to use in serviceable condition, but must be returned to Employer at end of job in good working condition. An individual employee is personally responsible for the return of any safety hand tools directly assigned to them.

Appendix 000032

22

## Power Tools

13.3 All power tools, equipment and apparatus shall be furnished by Employer.

## Storage Facility

13.4 Where size of job warrants it, Employer shall provide during and after working hours, a reasonable secure facility on the job, for the changing of clothes, storage of tools and clothing. Said facility shall be provided with necessary equipment to heat some when the weather necessitates. If the size of the job does not warrant such a facility, and if the job lasts more than one day, Employer shall provide a reasonable secure place, during and after working hours, for the storage of tools and clothing. If the storage facility furnished by Employer is not considered a secure place, the Union shall notify Employer. If Employer fails or refuses to provide a secure place, the Employer shall give the employee ample time each day to remove such tools and place them in his personal possession for safe-keeping. When tools are checked in or out this shall be done during working hours.

## Loss of Tools or Clothing

13.5 Employer shall be required to pay a maximum of $750.00 per employee to replace personal clothing or equipment when same is stolen or damaged by fire or other means so long as said clothing or equipment is in a locked gang or tool box provided by the Employer. Invoice must be submitted if Employer requires one.

## ARTICLE 14
## Miscellaneous Provisions
## Piecework

14.1 Employees will not contract, subcontract, work piece-work, or work for less than the scale of wages established by the Agreement. Employer agrees not to offer and/or pay, and the employee will not accept, a bonus based on specific

Appendix 000033

23

performances on any individual jobs.

## Work Limitations

14.2 There shall be no limitation placed on the amount of work to be performed by any employee during working hours.

## Certification of Welders

14.3 The Apprenticeship Training School or a similar facility is certified as an accredited test facility by the American Welding Society (AWS). All welders shall be certified in accordance with AWS standards. For welders employed at the time this Agreement is executed, all costs incurred at the Employer's request shall be paid by the Employer, except when certification is performed by the Apprenticeship Training School. Welders who have initially been certified shall be responsible for maintaining certification in accordance with AWS standards. At the time of hire, a welder must present a valid AWS certification card.

## Fabrication

14.4 When the Employer knows that fabricated products sold to a customer are to be installed within the geographical territory of the Union by persons not covered by a collective bargaining Agreement with the Union and the installation falls within the jurisdiction of the Union, the Employer shall so notify the Union as promptly as possible. If the Employer does not so notify the Union, the Union can withdraw the Architectural Iron Worker from his employ after sufficient warning by registered letter until such time as he does comply. The provisions of this Section are applicable only where the entire contract is sold F.O.B. job site.

## Drinking Water

14.5 Employer shall furnish suitable drinking water, and ice when requested.

## Equal Employment Opportunities

14.6 Employer and Union agree to extend equal

Appendix 000034

24

employment opportunity to all persons irrespective of their age, race, color, religion, sex or national origin.

## Leasing Equipment

14.7 Employer agrees that whenever he leases a boom or similar apparatus and the lease includes labor, he shall make as part of his agreement with such lessee the use of employees covered by this Agreement for the operation thereof, excluding the operating engineers.

## Dismissal

14.8 Employer shall upon request by the Union or the employee affected, give reason for an employee's dismissal.

## Change of Business Operation

14.9 Employer shall give notice to the Union in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of partnerships, if any

(b) Termination of business

(c) Change of name commonly used in business operation

(d) Change in form of business organization

(e) Incorporation of business

(f) Dissolution of corporation

(g) Name and business organization of successor

(h) Admission to or withdrawal from any association operating as a multi-employer or bargaining agent.

14.10 The Employer shall maintain an office and a telephone where he can be contacted during the usual working hours.

## Discrimination

14.11 The Employer agrees not to discriminate against any employee for demanding the benefits due him under this Agreement or for upholding the Constitution and By-Laws of his Union.

Appendix 000035

25

**Tool Crib**

14.12 The Employer agrees to hire an employee covered by this Agreement to perform the job of tool crib attendant, when, at the Employer's discretion, a tool crib attendant is required.

**Letter of Assignment/Letter of Past Performance**

14.13 The Employer shall, when requested by the Business Representative, deliver to the Union a "Letter of Assignment" and/or a "Letter of Past Performance," in form and substance as will clearly state that a certain type of work was assigned to and performed at a given location by Architectural Iron Workers by this Agreement.

# ARTICLE 15
## Wage and Welfare Bond

15.1 Each Employer signatory to this Agreement shall be required to post a Surety Bond or Irrevocable Letter of Credit in the principal sum indicated below to insure and guarantee the faithful performance of this Agreement. Union will withdraw men from jobsite within five (5) days of startup if Employer fails to provide such a bond within that time frame.

| NORMAL COMPLEMENT OF EMPLOYEES | BOND AMOUNT |
|---|---|
| 1 to 4 Employees | $30,000 |
| 5 to 9 Employees | $50,000 |
| 10 to 14 Employees | $70,000 |
| 15 to 19 Employees | $90,000 |
| 20 Employees or More | $110,000 |

In the event a signatory contractor is unable to secure the appropriate Bond or Letter of Credit, the contractor may post cash on deposit in the amount of 1-1/2 times the anticipated payroll plus fringe benefits. They shall pay weekly or monthly fringe benefits depending on cash deposit.

For contractors with an International Bond, a $30,000

Local Wage and Welfare Bond is also required.

15.2 The Iron League of Chicago, Inc. will submit a list of its members to the Union and will keep the Union informed of any changes in membership.

15.3 The Union will submit to the Iron League a list of all Employers, including those who are not members of the Iron League, who are signatory to Union contracts and who have posted Surety Bonds or irrevocable Letter of Credit. The Union will keep said list up to date. If any such signatory Employer is not maintaining a Surety Bond or irrevocable Letter of Credit, the Union shall take all action within its power to assure that such bond is posted.

## ARTICLE 16
### Business Representative

16.1 Access to Jobs: A representative of the Union, acting in his official capacity as a representative, shall have reasonable access to all jobs over which the Employer exercises the control of entry.

16.1(a) The Union shall provide the Iron League with current certificates of insurance on an annual basis showing the following insurance coverages: General Liability coverage, automobile liability coverage and workers' compensation insurance.

## ARTICLE 17
### Employers Obligation
### Parking Fees

17.1 The Employer shall pay the Employee $0.25 per hour in wages which shall compensate for all parking fees. The wage for parking fees is included in the wage rate referenced in Article 7, Section 7.1 of this Agreement.

Appendix 000037

27

**Out of Town**

17.2 The Employer shall pay all transportation and lodging expenses incurred by employees for work performed in a place requiring that he remain away from his home overnight. He shall be paid at the straight time rate for all time spent traveling to and from job site.

## Truck Driving

17.3 Whenever an employee, other than a general foreman, is required by his Employer to drive a work truck (a truck equipped with welding equipment, cylinders of compressed gas and other equipment needed on the job) to and from a job site and is required to be on the job at 8:00 a.m. and to remain on the job until 4:30 p.m., he shall be paid $5.00 in addition to his wages for the day. No such allowance will be paid to an employee who elects but is not required by his Employer to drive a work truck. If a Commercial Drivers License (CDL) is required for driving a company vehicle, the cost of the CDL test and employee's time spent in testing will be paid by the Employer.

## Transfer of Tools

17.4 Employee must be given ample period of time paid for by the Employer to transfer tools if he leaves a job at 4:30 p.m. and has to be on another job for the same Employer the next morning.

17.5 All allowances payable under Article 17 shall be paid to the employee without payroll tax withholding if permitted by applicable federal and state laws.

17.6 A company sign must be posted on all company trucks.

## ARTICLE 18
### Shift Work

18.1 When two (2) shifts are employed, each shift shall work seven and one-half (7 1/2) hours for eight (8) hours' pay

Appendix 000038

28

at regular time, when three (3) shifts are employed, seven (7) hours shall constitute a day's work for each shift for which a regular wage of eight (8) hours shall be paid or a proportionate part thereof for time worked. When multiple shifts are worked on Saturday, Sunday or recognized Holidays, the following shall apply: When two (2) shifts are employed, each shift shall work seven and one-half (7-1/2) hours for eight (8) hours' pay at double straight time rate of wages. When three (3) shifts are employed, each shift shall work seven (7) hours for eight (8) hours' pay at double the straight time rate of wages or a proportionate part thereof for time worked. In addition to the above compensation, there shall be an hourly shift premium paid based on hours paid for the second and third shift. That premium shall be additional wages equivalent to 10% of the hourly straight time rate. When two or more shifts are worked there shall be paid lunch period on all shifts. On all shift work performed on Saturday, Sunday or Holidays, the overtime rate of double time shall start with the beginning of the first or "morning" shift. Not more than one (1) shift shall be allowed on a job of less than five (5) days' duration except in case of an emergency, which shall be decided by the General Executive Board. In localities where the work day is less than eight (8) hours per day, the hours on shift work shall be shortened proportionately.

## ARTICLE 19
### Health & Welfare, Pension, Defined Contribution and Apprenticeship

19.1 Welfare: Employer shall pay into the A.I.W.U. Welfare Plan for the period 6/1/21 to 5/31/22 $14.23 per hour for each hour worked by an Employee covered by this Agreement. For the period 6/1/22 to 5/31/24 the amount per hour is subject to change from a by-contract with the Union's option under

Section 7.1.

19.2 Pension: Employer shall pay into the Iron Workers' Mid-America Pension, for the period 6/1/21 to 5/31/22 $9.00 and the SMA will be $2.00 per hour for each hour worked by an employee covered by this Agreement. For the period 6/1/22 to 5/31/24 the amount per hour is subject to change from above consistent with the Union's option under Section 7.1.

19.2(a) Defined Contribution: for the period 6/1/21 to 5/31/22, Employer shall pay into the Defined Contribution $12.99 per hour worked by an employee covered by this Agreement. For the period 6/1/22 to 5/31/24, the amount per hour is subject to change consistent with the Union's option under Section 7.1.

19.3 Apprenticeship Training: Employer shall pay to the Board of Trustees, Architectural Metal Trainee School, Local #63, from the contract rate of wages, for the period 6/1/21 to 5/31/24 $1.25 per hour for every hour worked by an employee covered by this Agreement. This amount is subject to change from above consistent with the Union's option under Section 7.1.

19.4 Industry Advancement Fund: The Industry Advancement Trust Fund is a fund set up between the Union and the Iron League to promote the Ornamental Iron Industry through advertising, magazine articles, etc. Employer shall pay to the Architectural Iron Workers of Chicago Industry Advancement Trust Fund $.08 per hour for each hour worked by an employee covered by the Agreement. Of the $.08 paid $.01 shall be paid to the Chicagoland Construction Safety Council. The Industry Advancement Fund shall be managed by The Iron League of Chicago, Inc., and the Union shall have no responsibility for its operations.

19.4(a) The Employer and Union shall jointly develop and implement a program to enhance the quality of work performed

under this Agreement.

19.5 Employer agrees to be bound by the Agreement and Declaration of Trust establishing each of the plans named above, and all present and future Amendments thereto and irrevocably designates as his representative of the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust and agrees to be bound by all action taken by said Employer Trustees.

19.6 Payments to each of the Plans named above, shall be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees.

19.7 The Agreements and Declarations of Trusts for each of the Plans named above are made a part of this Agreement as if set forth herein at length. Contributions to the Plans are to be made on one form using a single check. The check will be written and sent to the following: Iron Workers Local #63 Fringe Benefit Funds, P.O. Box 94412, Chicago, IL 60690.

19.8 Employer shall furnish the Trustees for each of the Plans named above names of employees, social security numbers, number of hours worked, and such other information as may be required for the proper and efficient administration of each of said Plans.

19.9 Failure of Employer, after reasonable notice by Trustees of each of the Plans above named, to furnish reports, pay contributions or comply with the rules and regulations formulated by said Trustees, shall be considered a violation of the terms and conditions of this Agreement and shall subject this Agreement to cancellation as to such Employer.

19.10 The Union will withdraw its members from such Employers, until all sums due from the Employer under this Article have been paid and this remedy shall be in addition

Appendix 000041

31

to all other remedies available to the Union and the Trustees and may be exercised by the Union, anything in this Agreement to the contrary notwithstanding. Such withdrawal of employees to collect contributions stated above shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration. When any contractor employing members of this Local Union becomes delinquent in the paying of fringe benefits said Employer shall then be required to pay each individual fund on a weekly basis. This payment shall be hand carried to Local #63's Financial Secretary/Treasurer's office and a weekly list of employees and hours submitted with the checks. If employees are withdrawn from any job in order to collect contributions as stated above, the employees who are affected by such stoppage of work shall be paid for lost time up to 16 hours provided that 2 days' notice of the intention to remove employees from the job is given to the Employer by the Union by registered mail.

19.10(a) The Employer may make contributions for all hours worked by superintendents and other management personnel for whom contributions to the welfare fund were heretofore made when such individuals were employed as Journeymen Iron Workers.

19.10(b) Any member of the Architectural Iron Workers Union Local #63 who received permission from the Executive Board to go into business as a subcontractor after signing the Agreement and submitting the proper bond agrees that he will pay 40 hours per week into the fringe benefit package for himself and any member of this Local Union who owns any part of this business.

19.10(c) In the event that an Employer becomes delinquent in making any of the aforesaid reports and payments, the Employer shall pay in addition to the amount due reasonable fees of Certified Public Accountants expressly hired to establish the

Appendix 000042

amount due, reasonable fees of attorney effectuating payments, interest and liquidated damages in amounts as determined in accordance and declaration of trust.

19.11 Both parties agree to renegotiate Article 19.3 in the event more monies are needed to maintain the Apprenticeship Program during the duration of this Agreement.

19.12 During the term of this Agreement, wages and fringe benefit contributions payable by the Employer, as set forth in Article 7, shall not be reduced commensurate to the costs to the Employer of any new legislation that provides duplication of benefits or compensation already provide for in this Agreement. The parties agree that in the event there is legislation which mandates health and welfare benefits to be provided in a manner materially different from that contemplated herein, the parties agree to reopen the contract for the limited purpose of negotiating potential changes necessitated by the legislation.

19.13(a) An employee may elect to participate in the 401K feature of the Architectural Iron Workers Local No. 63 Defined Contribution Pension Trust once the 401K feature is added to the Plan. To participate, the employee must voluntarily sign a taxed deferred savings authorization form approved by the Fund Trustees directing the Employer to reduce the employee's hourly pay by $.50 or multiples of $.50 to a maximum of $4.00 per hour (or I.R.S. Limits if lower). Employee tax deferred savings shall be reported on the same Employer reports and in the same manner as the Employer is reporting regular contributions.

19.13(b) Employee elections to have tax deferred savings transferred to the 401K Plan must be in writing and received by the employer at least ten (10) days prior to the stated election date. All tax deferred savings requests must be filed with the Employer with a copy sent to the Fund, an employee may cease making contributions at any time upon proper notice

to the Employer, but an employee may only change his deferral amount on June 1st and January 1st of each year, an employee who ceases contributions, other than on June 1st or January 1st, and an employee who has received a hardship withdrawal may not make voluntary deferral contributions for a minimum of one year following the date contributions ceased or the withdrawal was made.

19.13(c) The Local Pension Fund and 401K contributions will not exceed the maximum amounts allowed by the IRS. If contributions exceed the maximum allowed amount, deductions and contractor contributions will cease for the remainder of the year and such excess amounts will be added to the wages of the affected employee for the remaining portion of that year.

19.13(d) The Fund may disallow any Employer's ability to participate in the voluntary deferral portion of the plan in the event the Fund reasonably believes that an employer does not timely or accurately remit contributions and/or deductions.

# ARTICLE 20
## Injuries

20.1 If an employee covered by this Agreement sustains an accidental injury arising out of his employment, which require immediate medical care off the premises, during working hours, such employee shall be paid his regular wages for the time necessarily spent in going to a physician's office, medical center or hospital, as well as the time required to return to the job site. This provision shall be effective only on the date of the injury, unless subsequent visits during working hours are required by Employers physicians. When it is necessary for an employee to be taken to a hospital immediately following an injury, he shall be taken to the hospital nearest to the job site at the Employer's expense. The job steward shall be notified of all such injuries. An employee will be subject to a drug and

alcohol test.

20.2 In the event an employee is injured in the course of his employment, he shall not be dismissed from such employment because of his injury, nor shall he be dismissed during the period of medical care required by said injury, unless there is no work available with his Employer, or unless his dismissal is due to conditions beyond the control of the Employer, or he is not physically able to perform the work required.

20.3 The Steward, at his discretion, may attend to the needs of injured employees on the date the injury occurs and accompany them to the hospital, medical center, physician's office or employee's home, without any loss of pay.

20.4 An employee injured on the job shall receive a full day's wages if admitted to the hospital or if sent home under doctor's orders.

20.5 In the event there is legislation authorizing the parties to collectively bargain out of the Illinois Workers' Compensation Commission, the parties agree to reopen negotiations after the effective date of said legislation for the purpose of deciding whether to opt out of the Illinois Workers' Compensation Commission and negotiating a comprehensive collectively bargained method of compensating injured workers.

## ARTICLE 21
### Sub-Contracting

21.1 The parties hereto, being in the Construction Industry, qualify under the proviso of Section 8(e) of the National Labor Relations Act, 1947, as amended.

21.2 Employer shall not contract or subcontract any work coming within the jurisdictional claims of the Union and Article 1 hereof, to any person, firm or corporation not covered by a collective bargaining agreement with the Union, provided however, that the provisions of this paragraph shall apply only

Appendix 000045

35

to the contracting and sub-contracting of work to be done at the site of construction, alteration, painting or repair of a building structure or other work.

21.3 It shall be the duty of all persons letting or subletting work coming within jurisdiction claims of the Union to ascertain that the contractor or sub-contractor is reliable, financially responsible, and will comply with the provisions of this Agreement. All persons letting or subletting said work shall assume the responsibility for payment of all fringe benefits, in the event his contractor or sub-contractor fails in making payments or contributions.

## ARTICLE 22
## Safety

22.1 The Employer and all employees agree to adhere to and comply with the provisions of OHSA, the Illinois Health and Safety Act, local building and safety codes and to also comply with manufacturers' specifications for safe operation of equipment. The Employer must inform members of toxic material and will supply necessary safety equipment. All apprentices also must take the course as part of their training as per JAC approval.

A. In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the sole responsibility of the Employer to insure the safety and health of its employees. Nothing in this Agreement will make the Union liable to any employees or to any other persons in the event that injury or accident occurs.

B. The safety and health standards and rules contained herein are minimum standards and are not intended to imply that the Union objects to the establishment and imposition by the Employer of additional or more stringent rules to protect the health and safety of its employees. It shall be the sole

Appendix 000046

36

responsibility of the Employer to insure compliance with safety and health standards and rules.

### Maintenance of Equipment

22.2 Employer agrees to maintain all working equipment in a condition necessary to meet the requirements of the Illinois Department of Labor and Industry. No employee shall be required to use any equipment that fails to meet the standards above mentioned, nor shall he be discriminated against for his refusal to work with such equipment.

# ARTICLE 23
## Job Steward

23.1 The Business Representative of the Union shall place a Job Steward at each job site, who shall not be subject to discrimination for discharging his duties, and other than the foreman, he shall be the last remaining employee working at the job site, providing he can perform the work remaining to be performed.

23.2 The duties of the Job Steward shall be to report to the Business Representative of the Union the following, but shall not prevent him from working as required by the Employer:

(a) Members dues delinquencies.

(b) Overtime – contemplated and actually performed.

(c) Violations of the Collective Bargaining Agreement.

(d) Employees covered by this Agreement employed seven (7) days or more, who have not become members of the Union.

(e) Injuries on the job.

(f) Disputes and grievances of member.

(g) All employees hired and discharged.

(h) He shall report unsafe conditions on the job to the Employer's representative. The Steward may have the right to inspect the job as necessary in furtherance of his duties, but his inspection shall be confined to the job on which the Employer

by whom he is employed is working.

23.3 Whenever one or more employees covered by this Agreement is required to work overtime, designated Steward shall have right of first refusal.

23.4 When 35 or more employees are employed at any one job site by the same Employer, the Steward shall be a full time Safety Man as well as Steward. Safety men on jobs with 35 or more men, the Steward will be required to have completed an OSHA 30 hour course by May 31, 2007. The contractor will pay for the training time.

23.5 The Steward or Foreman shall attend all safety meetings and relate minutes of same to members of the job.

23.6 Employer agrees to notify Union within 20 days before starting work on any job whose contract amount exceeds $250,000. Thereafter, upon written request by either party, a pre-job conference will be held prior to the time employees of such Employers begin work on the job site.

23.7 When two-way radios are used on a job site by a foreman, the Steward will be issued one for his use also.

23.8 Contractor shall inform Steward upon request as to who the Workers' Compensation Insurance carrier is.

## ARTICLE 24
### Insurance

24.1 Employer agrees to elect to be bound by the provisions of the Illinois Occupational Diseases Act and shall furnish to the Union a Certificate of Insurance covering all liability under such Act, and agrees further to furnish a Certificate of Insurance to the Union covering liability under the provisions of the Illinois Worker's Compensation Act.

24.2 It is agreed that all Employers not otherwise required to pay contributions under the Illinois Unemployment Compensation Act shall regardless of the number of men

employed, shall voluntarily elect to become subject thereto and liable for the payment of contributions there under.

24.3 On each pay day, the Employer shall deliver to employees a statement showing the amounts withheld for Federal, Social Security, Withholding Tax, and all other applicable deductions.

24.4 In the event there is legislation authorizing the parties to collectively bargain out of the Illinois Workers' Compensation Commission, the parties agree to reopen negotiations after the effective date of said legislation for the purpose of deciding whether to opt out of the Illinois Workers' Compensation Commission and negotiating a comprehensive collectively bargained method of compensating injured workers.

## ARTICLE 25
### Union Assessment Check-Off System

25.1 Employer shall deduct from the wages of each employee covered by this Agreement, the current Union working assessment as certified by the Union for all hours paid. Such deductions shall be made when Employer has in his possession a written check-off authorization form executed by the employee.

The aforesaid deductions shall be remitted monthly by Employer to the Union on the form customarily used for submitting monthly Welfare and Pension contributions.

## ARTICLE 26
### Working Rules

26.1 Adequate lighting must be provided at all times.

26.2 In restricted areas where private transportation is not permitted, the Employer shall furnish transportation that provides shelter from inclement weather from the gate to the job site and back to the gate for said distance of one-half (1/2)

Appendix 000049

39

26.3 No less than six (6) men and a foreman shall be employed around any guy or stiff leg derrick used on steel erection, and on all mobile or power-operated rigs of any description no less than four (4) men and a foreman shall be employed. An adequate number of men to safely unload a truck, but no less than 3 total, shall be used with a crane.

26.4 No less than five (5) men including the foreman shall be used when jumping a boom, etc. Any amount of men less that five (5) shall be considered unsafe.

26.5 No employee shall be permitted to ride the load or load fall except in case of inspection and erection and dismantling of derricks.

26.6 Supervisory personnel, when using overhead cranes and power equipment at the job site are to check all limit switches, cables, lights, dogs and controls when such equipment is first used by the trade and as required periodically thereafter and report any deficiencies to the responsible authority.

26.7 When working on crane runways under operating conditions, rail stops, lights and flags should be placed between workmen and operating crane. If conditions do not permit such safety precautions, a safety man or men will be provided to protect workmen.

26.8 If hot rails cannot be cut or locked out, adequate covering or protection shall be provided.

26.9 Steel cable will be used instead of chains or hemp slings.

26.10 No employee shall be permitted to work in an elevator shaft while car is in operation. The first floor beneath and first floor above men working shall be planked safe in all elevator shafts.

26.11 The Employer may demand a physical or medical examination as a condition of employment.

26.12 No flammable liquids in any type of container or piece of equipment shall be stored in the same shed or room used by the employees to change their clothes.

26.13 If any member of this International is suspected of any infraction of these working rules regarding the hourly wage paid him, he will be required to produce his payroll check for inspection, to be checked by the Steward or Business Agent.

26.14 No member of this Union will be permitted to receive wages for more than one job at the same time. No member of the Union while on the payroll of a contractor, shall be permitted to be employed by another Employer, until terminating his employment with previous Employer.

26.15 The oral communication system shall be provided between the signal man and hoisting engineer on all material towers and derricks where the signal man and the hoisting engineer are not ordinarily and clearly visible to each other. Proper and safe platform planking shall be used on all towers and similar equipment.

26.16 When phones are in use by the hoisting crew, two men are to use phones at all times the load is being hoisted. They will not help on hoisting or landing a load.

26.17 Where structural steel, ornamental iron and metal in buildings, bridges and other structures are altered, repaired, moved, dismantled and/or re-erected by any method or means, all work in connection therewith shall be performed by the employees covered by this Agreement.

26.18 There will be adequate landing platforms on all buildings where building materials are stored or stock-piled.

26.19 The unloading, sorting, distributing, and handling of all material coming under the jurisdictional claims of the Union in or about the job, or at storage points, shall be done by Iron Workers, in accordance with International regulations and official decisions.

Appendix 000051

26.20 Two employees covered by this Agreement will be required at all times whenever welding or burning equipment is used.

26.21 Where material comes to a distant point or storage yard and is unloaded by hand, the Employer may, at his discretion, use other workmen under a competent foreman of such crew. Where power equipment or rigging is used to unload or load such material, it shall be the work of employees covered by this Agreement.

26.22 No employees covered by this Agreement shall be permitted to furnish, supply or rent to an Employer any equipment used in connection with employee's work, such as welding machines, cutting torches, impact wrenches, power grinders, power drills, pickup trucks, hoisting equipment, or other similar equipment in a category recognizably larger than conventional hand tools covered in Paragraph 1 of this Section.

26.23 The loading and unloading of all tools and equipment used by employees covered by this Agreement, shall be done by such employees.

26.24 Special Safety Rules.

(a) Any employee failing to comply with the safety and health standards and all rules, regulations and orders which are applicable to his own actions and conduct on the job, may be relieved of his employment and refused further employment on the site of the violation.

(b) All employees must comply with OSHA standards relating to construction work.

(c) The Union endorses the Chicago Building Trades Council resolution concerning elevator facilities for work above eight floors.

(d) Employees shall participate as per Section 22.1.

26.25 Employees shall have 15 minutes to pick up tools and wrap up when necessary.

Appendix 000052

26.26 Employees shall be subject to the Joint Labor Management Drug-Free Workplace Policy. The Impact Drug Policy will be implemented into our contract effective June 1, 2007.

26.27 When employees are required to use respiratory equipment with a PF of 10 or above, employees shall receive an incentive wage of 15% above the wage rate of said employee. Employees shall be provided with respiratory masks as required by OSHA. Supplied air and in confined spaces where respiration equipment is required by OHSA or other agency. Welding fume protection and adequate ventilation will be supplied when requested by the welder.

Journeyman Upgrading Training – There will be 8 hours of Journeyman Upgrading over the course of the contract, i.e. welding and scaffolding certification.

## ARTICLE 27
## Saving Clause

27.1 Should any part of or any provision herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof, provided however, upon such invalidation the parties signatory hereto agree to immediately meet to renegotiate such parts or provisions affected. The remaining parts or provisions shall remain in full force and effect.

## ARTICLE 28
## Settlement of Disputes

28.1 Any dispute as to the proper interpretation of this Agreement shall be handled in the first instance by a representative of the Union and the Employer, and if they fail

Appendix 000053

43

to reach a settlement within five (5) days, it shall be referred to a Board of Arbitration composed of one (1) person appointed by each party, the two (2) so-appointed to select a third member. In the event that the two (2) so appointed arbitrators are unable within two (2) days to agree upon the third arbitrator, they shall jointly request the Federal Mediation and Conciliation Service to furnish a panel of five (5) names from which the third member shall be selected. The decision of the Board of Arbitration shall be handed down within two (2) days after the selection of the third member and the decision of the Board of Arbitration shall be final and binding upon both parties.

28.2 The Board of Arbitration shall have jurisdiction over all questions involving the interpretation and application of any Section of this Agreement. It shall not, however, be empowered to handle negotiations for a new Agreement, changes in the wage scale, or jurisdictional disputes.

28.3 Each party shall individually pay the expenses of the arbitrator it appoints and the two parties shall jointly share the expense of the third arbitrator.

28.4 Subject to the provision of Sections 7.2, 12.2 and 19.10, it is mutually agreed that there shall be no strikes authorized by the Union or no lockouts authorized by the Employer except for the refusal of either party to submit to arbitration, in accordance with this Article, or failure on the part of either party to carry out the award of the Board of Arbitration.

### ARTICLE 29
### Scope of Agreement

29.1 This Agreement contains all of the provisions agreed upon by the Employers and the Union. Neither the Employers nor the Union will be bound by rules, regulations, or agreements not herein contained except interpretations or decisions of the Board of Arbitration.

29.2 If, during the term of this Agreement, the Union enters into an agreement with any Private Sector Employer or Employers providing for wages, hours or any other terms and conditions of employment different from those provided for in this Agreement, it shall so notify the Employer. The Employer, at its option, may substitute any or all of the terms of such agreement for the provisions of this Agreement, except however, this paragraph shall not apply to more favorable rates, contract terms or work rules granted fence industry Employers.

29.3 Notwithstanding the provisions of Article 28, the Union is not obligated to, and agrees that during the term of this Agreement, it will not refer any Union members or issue any work permits to individuals for employment by any Employer who does not have a collective bargaining agreement with the Union or for employment by any Employer who has been declared delinquent by the Trustees in writing in making the contributions required by Article 19 or who fails after a reasonable period to post a bond required under Article 15.

## ARTICLE 30
### Iron Workers Local 63 Political Action League

30.1 The Employer agrees to deduct $.06 per hour from the pay of each employee covered by this Agreement who executes an appropriate voluntary checkoff authorization form to the Iron Workers Local 63 Political Action League. Deductions shall be in the amount specified in the checkoff authorization form signed by the employee and deducted every week. The deduction shall continue for the life of this agreement for those employees who sign Iron Workers Local 63 Political Action League authorization forms unless they are revoked individually and in writing.

The Employer agrees to transmit Iron Workers Local 63 Political Action League deductions to the Iron Workers

Local 63 Political Action League in care of the Union. These transmittals shall be on a monthly basis. The Employer further agrees to transmit to the Union at the same time the names of those employees for whom deductions have been made and the amounts deducted for each employee.

The Union agrees to reimburse the Employer for the marginal costs of administering this political contribution check off.

The Union shall indemnify, and save Employer harmless against any and all claims, demands, suits or other forms of liability that shall arise out of or by reason of action taken by Employer for the purpose of complying with any provision of this Article.

### Impact Contract Clause

The Employer and Union shall contribute five eighths of one percent (5/8 of 1%) of the applicable hourly journeyman wage rate for each hour worked to Ironworkers Management Progressive Action Cooperative Trust (IMPACT), a jointly trusted Cooperative Trust with federal tax exempt status under Section 501(a) of the Internal Revenue Code as an exempt organization under Section 501(c)(5) of the Internal Revenue Code. Tax Exempt status determination was rendered under the initial name of the Trust which was the Employers Responsive Educational Cooperation Trust of North America. The general purpose of the Trust includes the improvement and development of the union ironworking industry through education, training, communication, cooperation and governmental lobbying and legislative initiatives.

The reporting, payment, frequency of payment and administration of such contributions shall be governed by the terms of the IMPACT Trust Agreement, policies and resolutions.

The Employer and Union agree that by making contributions to IMPACT, each of them shall become bound to

IMPACT's Drug and Alcohol Screening Policy and Procedure or equivalent program and any amendments or modifications thereto. The Employer and Union will be contributing the five eighths of one percent (5/8 of 1%) per hour jointly through the collectively bargained total package. The union will be allocating the aforementioned contribution from the collectively bargained total package agreement accordingly.

### Ironworkers Organizing Fund

The Employer agrees to deduct three-eighths of one percent (3/8 of 1%) of the applicable hourly journeyman wage rate per hour from the pay of each employee covered by this Agreement for the International Ironworkers Organizing Fund. The Fund may be used to defray the cost of research, education, legal, administrative, and political support to assist in organizing.

The aforesaid deductions shall be remitted monthly by the Employer to the Union on the form customarily used for submitting monthly Welfare and Pension Contributions.

## ARTICLE 31
### Duration and Termination

31.1 This Agreement shall remain in effect until midnight, May 31st, 2024, and unless written notice be given by either party to the other at least four (4) months prior to such date of a desire for change therein or to terminate the same, it shall continue in effect for an additional year thereafter.

IN WITNESS WHEREOF, This Agreement has been executed by the parties hereto as of the date and year first above written in the City of Broadview, State of Illinois.

ARCHITECTURAL AND
ORNAMENTAL IRON
WORKERS' UNION
LOCAL 63
By:

IRON LEAGUE OF
CHICAGO, INC.

By:

Business Manager

President

**NOTES**

**NOTES**

Appendix 000061



# EXHIBIT 3

# INTERNATIONAL AGREEMENT



**International Association of Bridge, Structural,
Ornamental and Reinforcing Iron Workers
Telephone:    202-383-4800
gso@iwintl.org**

9/2018

Appendix 000064

## INTERNATIONAL AGREEMENT

**Section 1.**  This Agreement, entered into between _____
_____(the "Employer"), and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (individually, the "International Association" and together with the Employer, the "Parties") becomes effective _____and shall continue in effect until terminated by three months' written notice from either party to the other.  Changes may be made at any time by mutual consent.

**Section 2.**  This agreement shall be effective in all places where work is being performed or is to be performed by the Employer, or by any person, firm or corporation owned or financially controlled by the Employer, and covers all work coming under the jurisdiction of the International Association as set forth in Article IV of the Constitution of the International Association.

**Section 3.**  The Employer recognizes the International Association as the sole and exclusive bargaining representative for all employees employed on all work coming under the jurisdiction of the International Association.

**Section 4.**  The Employer agrees not to sublet any work under the jurisdiction of the International Association or its Local Unions to any person, firm or corporation not in contractual relationship with the International Association or its affiliated Local Unions.  In the event the Employer breaches this paragraph, the Employer shall be liable for all lost wages and benefits.

**Section 5.**  All employees who are members of the International Association on the effective date of this agreement shall be required to remain members of the International Association in good standing as a condition of employment during the term of this agreement.  All employees may be required to become and remain members of the International Association in good standing as condition of employment from and after the thirty-first day following the dates of their employment, or the effective date of this agreement, whichever is later.  (This clause shall be effective only in those states permitting Union Security).  All employees shall pay working assessments to the Local Union in the geographic location of the project, except as set forth below.

**Section 6.**  (A)  The Employer agrees to abide by the work rules, pay the scale of wages and benefits, work the schedule of hours, and abide by the terms and conditions of employment in force and effect in the Local Union in which the Employer is performing or is to perform work.

(B)  <u>Key Employees</u>:  The Employer, in its sole discretion, may designate certain individuals as key employees. Any such designated individual shall be referred to as a "Key Employee" of Employer and shall be subject to the specific terms of this Agreement and Appendix A with respect to Key Employees. Employer agrees to make timely payments into all fringe benefit funds in accordance with the applicable Local Union collective bargaining agreement.  With respect to all key employees who designate home Local Unions other than the Local Union in whose geographic jurisdiction the work is performed, this agreement authorizes contributions to such pension, health and welfare, annuity, vacation and other welfare benefit funds as are legal and appropriate under ERISA or under another applicable or federal labor law to which the employer and International Association agree that contributions should be made in such amounts as is reflected in the applicable collective bargaining agreement, provided that the trust funds so designated agree to accept the contributions and credit the key employees for those contributions in accordance with the trust funds' rules.  The contributions shall be at the customary rate

9/2018

set by the collective bargaining agreement where the work is being performed. If the home Local Union's benefit rates are less than the rate of the applicable collective bargaining agreement where the work is being performed, the difference shall be paid to the key employee as wages in their check. If the home trust funds refuse to accept the contributions then the contribution amounts shall be paid to the trust fund where the work is being performed. This section pertaining to key employees shall apply only to those individuals agreed to by the International Association as key persons who are members of a Local Union other than the Local Union which has geographic jurisdiction where the work is performed. The Employer is required to submit fringe benefit contribution forms to the home Local Union and provide a copy of the form to the Local Union in whose jurisdiction the work is performed. The Employer is also required to provide a copy of the employee's check stub as evidence that the fringes are being satisfied.

(C) <u>Other Than Key Employees</u>: Employer agrees to make timely payments into all fringe benefit funds in accordance with the applicable Local Union collective bargaining agreement. This agreement authorizes contributions to such pension, health and welfare, annuity, vacation and other welfare benefit funds as are legal and appropriate under ERISA or under another applicable or federal labor law to which the employer and International Association agree that contributions should be made in such amounts as is reflected in the applicable collective bargaining agreement. Unless otherwise specifically designated herein, those funds shall be the funds of the home Local Union of the geographic jurisdiction in which the work is performed.

(D) Failure to make remittances to any fringe benefit funds designated by the applicable collective bargaining agreement shall subject the employer to all penalty, liquidated damage, interest, attorneys and expert fees, and other amounts due and owing pursuant to the Local Union collective bargaining agreements and fringe benefit fund documents in question. Under no circumstances shall there be a request for a payment of double fringe benefit amounts (benefits paid to more than one Local Union's funds) as a result of work performed under this agreement.

(E) The terms of the various trust and plan fund documents as they currently exist, and as they may be amended by the trustees from time to time for the duration of this agreement are incorporated herein and shall apply to the signatory employer. Should an employer fail to make all contributions or file all reports as timely required then the provisions of this agreement pertaining to work stoppages and other economic activity shall not apply and the International Association may direct its members to engage in a work stoppage, strike or other legal economic activity to enforce the provisions of this agreement. This paragraph shall not be subject to arbitration.

(F) The employee may clear in electronically through the Local Union where the work is being performed and shall be eligible for work as long as he is otherwise eligible for dispatch in that his dues is paid up and he is not prohibited from working due to a failed drug test. Any required fee for a traveler may be paid electronically or through the mail.

(G) Key Employees, general foremen, and foremen shall have their working assessments remitted to the Local Union where a majority of their work is performed. If no area has a majority of the work, the working assessments shall be remitted to the home Local Union. Superintendents shall have their working assessments remitted to their home Local Union.

(H) No Work Stoppage. There shall be no lock out or work stoppage in the event a local Collective Bargaining Agreement expires. In such event, the Employer shall continue to observe the terms and conditions of employment in the expired agreement until a new contract has been reached in the area

where the work is being performed. The Employer further agrees to comply with the terms of the new agreement effective upon the effective date of the new agreement. Any retroactive wage differentials shall be paid on the next pay day.

(I) Payment Methods. Employer is required to make net wage payments available the same day as specified in the local Collective Bargaining Agreement through an acceptable form of payment. Acceptable forms of payment include cash, check, direct deposit or debit card. Any additional fees to transfer the lump payment to a different account beyond that of a check are to be paid by the Employer. In the event of a lay-off, wage payments shall be made on the date of the lay-off through one of the acceptable forms of payment.

**Section 7.** The Employer agrees to employ Journeymen in any territory where work is being performed or is to be performed in accordance with the Hiring Hall or Referral Plan in force and effect in the jurisdiction of the Local Union where such work is being performed or is to be performed as set forth more fully in Appendix A.

**Section 8.** Any violation of this Agreement, or the subletting of any work coming under the jurisdiction of the International Association to any person, firm or corporation not in contractual relationship with the International Association or its affiliated Local Unions is sufficient cause for the cancellation of this agreement by the International Office of the International Association in its discretion.

**Section 9.** (A) In case a dispute arises which involves a question of the scale of wages or an interpretation of this agreement, the matter shall be referred to the General President of the International Association and he or his representative shall meet with a representative of the Employer who shall take steps at once to ascertain the facts and render a decision thereon.

(B) When the dispute involves a scale of wages, any decision rendered shall be retroactive to the date on which the dispute originated.

(C) In case the representative of the Employer and the representative of the International Association are unable to reach an agreement on the facts in the case, they may select an agency mutually agreeable to them to hear and pass upon the case in dispute to binding arbitration.

**Section 10.** Any provision of this agreement which is in conflict with any national, state or local law or governmental regulation affecting all or part of the territorial limits covered by this agreement shall be suspended in operation within the territorial limits to which such law or regulation is applicable for the period during which such law or regulation is in effect. Such suspension shall not affect the operation of such provisions in territories covered by the agreement to which the law or regulation is not applicable, nor shall it affect the operations of the remainder of the provisions of the agreement within the territorial limits to which such law or regulation is applicable.

**Section 11.** Any dispute as to the application or interpretation of any Local Union or District Council agreement, which is applicable to any particular work site of an Employer, shall be subject to the grievance procedure contained in such Local Union or District Council agreement and must be resolved through such grievance procedure.

**Section 12.** This agreement shall apply to the individual Employer signatory hereto under any name or style under which said Employer is engaged in the construction industry, directly or indirectly. This agreement may be executed electronically or in person and may be signed in separate counter-parts,

Appendix 000067

which together shall constitute the original signed agreement.

**Section 13.**   If either party exercises its right to terminate this agreement, it shall, upon the request of the other party, enter into negotiations for a successor agreement or concerning the effects of such termination, whichever is appropriate.

**Section 14.**   The Employer shall be required to secure a surety bond in the amount of $100,000.   This bond shall be kept in force during the course of this Agreement and shall take the place of any or all bonds that are or may be required by various Local Union agreements or benefit plans.

## APPENDIX A
## REFERRAL CLAUSE

In order to maintain an efficient system of production in the industry, to provide for an orderly procedure of referral of applicants for employment and to preserve the legitimate interests of the employees in their employment, the Employer and Union agree to adopt the referral system in place in the territory where the work is performed except that foremen, general foremen, superintendents and Key Employees, may be hired as set forth herein.

**Section 1.**   The Employer shall have the right to employ directly fifty percent (50%) of its ironworker work force from outside the Local where the work is being performed. The fifty percent (50%) shall include Key Employees, superintendents, general foremen, foremen.  The combination of Key employees and supervision shall not exceed fifty percent (50%) unless the Local Union where the work is being performed cannot supply the additional ironworker requests.  All employees must be eligible to work and be in good standing in their Local Union in order to be employed by the Employer. This provision shall supersede the Local Union referral service or hiring hall terms, and shall apply across jobs within the Local Union area.

If the Local Union or District Council Agreement in the territory where the job of the Employer is being performed contains a referral or hiring hall clause, the Employer shall comply with that referral clause for all additional ironworkers.  Provided that said Local Union or District Council referral clause complies with the National Labor Relations Act, the Employer shall be subject to those hiring hall requirements as Local Union Employers are generally required to follow, except as amended by Appendix A hereto.

**Section 2.**   All other employees required by the Employer shall be furnished and referred to the Employer by the Union.

**Section 3.**   The Employer shall have the right to reject any applicant referred by the Local Union. Once referred to the Employer, the Local Union shall not knowingly refer employees to other employment except with respect to apprentices who may be reassigned by the training fund to another job as part of the apprenticeship requirements.

**Section 4.**   The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.

**Section 5.**   Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the Employer and Local Union.

9/2018

Appendix 000068

**Section 6.**     In the event that the referral facilities maintained by the Local Union are unable to fill the requisition of an Employer for employees within a forty-eight (48) hour period after such requisition is made by the Employer (Saturdays, Sundays and Holidays excluded), the Employer may employ applicants directly at the job site.   In such event, the Employer will notify the Local Union of the names and dates of such hirings.

International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers

_____
Employer Name

_____
General President

_____
Name and Title (signed)

_____
General Secretary

_____
Name and Title (printed)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Effective Date

6                                                      9/2018

Appendix 000069

Iron Workers Online

Page 1 of 1

**Company Report**

Company ID: VEISU-1

Name: VEI Supply, Inc. (dba VEI Corporation)
Address1: 105 W Adams Street, Suite 2308
City/State/Zip/Country: Chicago IL 60603

Statue: ACTIVE

# 11 397

Phone 1 / 2 / Fax: (312) 985-6840

Contact(Last/First/Mi/Mr-Ms): Ventura/Tranquilino/Ryan/Mr.
Salutation: Mr.
Title: President

(312) 985-0275

Contact (Last/First/Mi/Mr-Ms): / / /
Salutation:
Title:

Sort Name: V E I SUPPLY INC DVA VEI CORPORATION

| Agreements: | Agreement | Status | Start | Stop | GEB # | Signer |
|---|---|---|---|---|---|---|
| | INTERNATIONAL AGREEMENT | NAME CHANGE | 07/29/2015 | 10/26/2015 | 8970 | Tranquilino Ryan Ventura, President |

MAR 3 0 2017

n/lk/a "VEI SOLUTIONS, INC." - S

https://iwonline.iwintl.org/IWITS/LIVE/EditDialog.asw?2p=rwasen&rak=6610

# EXHIBIT 4



# IRON WORKERS

2350 E. 170th Street, P. O. Box 708
Lansing, Illinois 60438
Phone 708-474-9902
Toll Free 1-800-232-8029
Fax 708-474-9982
www.iwrmidamerica.com

**Mid-America Pension Plan — Mid-America Supplemental Monthly Annuity (SMA) Fund**

PAUL E. FLASCH, *Administrator*

LAUREL GILLUND, *Senior Pension Processor / Controller*
KELLY WILLIAMSON, *Contribution Accounting Supervisor*
SPIRIT MONAHAN, *Delinquent Account Coordinator*

## PROMISSORY NOTE

PRINCIPAL AMOUNT: $ 97,013.16

FOR VALUE RECEIVED, I, Tranquilino R. Ventura, as individual and as principal of VEI Solutions, Inc. agree that VEI Solutions, Inc. is a party to collective bargaining agreement with Iron Workers' Local Union No. 63 (Broadview, IL), which agreement requires fringe benefit contributions to various fringe benefit funds including but not limited to Mid-America Pension and Mid-America Supplemental Monthly Annuity (SMA) Funds (collectively the Funds) based upon hours worked by employees performing work covered under the respective collective bargaining agreement. Currently, VEI Solutions, Inc. is delinquent in payment to the Funds for the period of May and June 2021.

I, Tranquilino R. Ventura, as individual and as principal of VEI Solutions, Inc. promise to pay the sum of $ 97,013.16 to the Funds. I agree to pay that amount in full by July 15, 2022. **Payments by check are to be issued to the 'Mid-America Pension Fund' and mailed to Iron Workers' Mid-America Funds, P.O. Box 708, Lansing, IL 60438.** I also agree and acknowledge that as an express condition of the agreement, VEI Solutions, Inc. will make timely payment of all contributions due in all of the Funds' participating jurisdictions for July 2021 forward.

I understand that by accepting this Note, the Trustees of the Funds do not waive any rights of the Local Union(s) to collect unpaid contributions. By executing this Note, I agree that the above amount is due and owing to the Funds under the applicable collective bargaining agreement. To secure the payment of said amount, I agree to be personally liable for any unpaid amounts. If a lawsuit is filed against me or VEI Solutions, Inc. to collect any unpaid amounts on this Note, I do hereby waive any and all statutory and contractual defenses except the defense of payment.

AUG - 4 2021

Tranquilino R. Ventura, individually and as principal of
VEI Solutions, Inc.

*"Working exclusively for Union Iron Workers and their Families"*

Appendix 000072

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRON WORKERS' MID-AMERICA )
PENSON PLAN, )
 )
IRON WORKERS' MID-AMERICA )
SUPPLEMENTAL MONTHLY )    CIVIL ACTION
ANNUITY (SMA FUND) )
 )    CASE NO.: 2022 C 0196
PAUL E. FLASCH, )
Its Administrative Manager, )    JUDGE ELAINE E. BUCKLO
 )
        Plaintiffs, )
 )
   vs. )
 )
VEI SOLUTIONS, INC. )
an Illinois corporation, )
 )
TRANQUILINO R. VENTURA, )
An individual, )
 )
        Defendants. )
 )

**DEFENDANT, TRANQUILINO R. VENTURA'S**
**ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

    Defendant, Tranquilino R. Ventura, by and through his attorneys, MITCHELL S.
CHABAN and ROENAN PATT of LEVIN GINSBURG, as and for their answer to Plaintiffs'
First Amended Complaint as follows:

**COUNT I**
**(Claim under ERISA by Funds against VEI)**

    1.    This action arises under the laws of the United States and is brought pursuant to the
Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145 (herein-
after referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising

thereunder, as hereinafter more fully appears.

**ANSWER:** The allegations set forth in this paragraph are not directed at Ventura and as such, no response is required.

2.      Plaintiffs, the IRON WORKERS' MID-AMERICA PENSION PLAN and IRON WORKERS' MID-AMERICA SUPPLEMENTAL MONTHLY ANNUITY (SMA) FUND, are pension and related joint, labor-management funds and bring this action as "employee pension benefit funds," and "plans," under ERISA and Plaintiff, PAULE. FLASCH, is the Administrative Manager of Plaintiff Funds and a fiduciary with respect thereto. Plaintiff Funds are administered within this District and Division.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

3.      VEI is obligated to make fringe benefit contributions to the Funds under the terms of the Agreements and Declarations of Trust establishing and outlining the administration of these Funds, and pursuant to the terms of one or more collective bargaining agreements entered into by VEI.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

4.      As an employer obligated to make fringe benefit contributions to the Funds, VEI is specifically required to do the following:

(a)      To submit to Plaintiffs for each month, by the 15th day of the month following the month for which the report is made, a report stating the names, social security numbers, and total hours worked or for which wages were received in such month by each and every person on whose behalf contributions are required to be made by

VEI to Plaintiffs; or, if no such persons are employed for a given month, to submit a report so stating

(b)   To have a duly authorized agent verify said reports by signature and to accompany the reports with payment of contributions based upon an hourly rate as stated in the applicable agreements;

(c)   To make all of its payroll books and records available to Plaintiffs for the purpose of auditing same, to detem1ine whether VEI is making full payment as required under the applicable agreements;

(d)   To compensate Plaintiffs for the additional administrative costs and burdens imposed by VEI's failure to pay, or untimely payment of, contributions, by way of the payment of liquidated damages in the amount of 1 ½% per month on the whole amount of contributions remaining from time to time unpaid, together with interest as provided in ERISA, 29 U.S.C. § 1132(g);

(e)   To pay any and all costs incurred by Plaintiffs in auditing VEI's payroll records, should it be determined that VEI was delinquent in the reporting or submission of all contributions required of it to be made to Plaintiffs;

(f)   To pay Plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require VEI to submit its payroll books and records for audit or to recover delinquent contributions;

(g)   To furnish to Plaintiffs a bond with good and sufficient surety thereon, in an amount acceptable to Plaintiffs, to cover future contributions due the Plaintiffs.

**ANSWER:**  Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

5.   VEI is delinquent and bas breached its obligations to Plaintiffs and its obligations under the plans in the following respects:

(a)   VEI has failed and refused to verify and submit all of its reports to Plaintiffs due, to date, and/or, has failed to make payment of all contributions acknowledged by VEI thereon to be due Plaintiffs;

(b)   VEI bas failed and refused to submit all amounts due pursuant to the terms of a Promissory Note entered into by VEI in or around August 2021 for the repayment of contributions, liquidated damages and interest incurred for the months of May 2021 and June 2021.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

6.      That upon careful review of all records maintained by Plaintiffs, and after application of any and all partial payments made by VEI, there is a total of $57,316.06, known to be due Plaintiffs from VEI, subject however to the possibility that additional monies may be due Plaintiffs from VEI based upon VEI's failure to submit all required reports, or to accurately state all hours for which contributions are due on reports previously submitted, and subject further to the possibility that additional contributions and liquidated damages may come due during the pendency of this lawsuit.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

7.      Plaintiffs have requested that VEI perform its obligations as aforesaid, but VEI has failed and refused to so perform.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

8.      VEI's continuing refusal and failure to perform its obligations to Plaintiffs is causing and will continue to cause irreparable injuries to Plaintiffs for which Plaintiffs have no adequate remedy at law.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

### Count II
### (Claim for Breach of Promissory Noteby Plaintiffs against all Defendants)

9.      Plaintiffs reallege and incorporate by reference Paragraphs 2 through 8 into this Count.

**ANSWER:** Defendant restates his answers to Paragraphs 2 through 8 as if fully set forth herein.

10.      Plaintiffs state that federal jurisdiction over this claim is also proper as this claim is "so related" to the claim in Count I that it forms "part of the same case or controversy." 29 U.S.C. §1367.

**ANSWER:** The allegations do not allege any facts but rather states a legal conclusion to which an answer is not required.

11.      In or about August 2021, Vei and Ventura entered into a Promissory Note to pay over time certain delinquent contributions, liquidated damages and interest due to the Plaintiffs for work in Local 63's jurisdiction for the months of May and June 2021, in the total amount of $97,013.16, plus interest (a copy of the Promissory Note is attached hereto).

**ANSWER:** Defendant admits the parties entered into a Promissory Note. Answering further, Promissory Note attached to the Complaint is best evidence of its terms and Defendant denies any allegation inconsistent therewith.

12.      Defendants are in breach of the Promissory Note, because VEI failed to timely submit its monthly fringe benefit contribution report for November 2021 and pay the contributions

due, if any, for the contribution month of November 2021.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

13.    Defendants made five payments of $8,500.00 each from August 15, 2021 throughDecember 15, 2021, totaling $42,500.00, applied towards the Promissory Note, leaving a principal balance of $57,316.06, plus interest.

**ANSWER:** Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and, on that basis, denies the same.

## FIRST AFFIRMATIVE DEFENSE

1.   Count II is barred, in whole or in part, due to Plaintiffs' failure to mitigate their damages.

Respectfully Submitted,

TRANQUILINO R. VENTURA

By: /s/ Mitchell S. Chaban
            One of His Attorneys

Mitchell S. Chaban **-** mchaban@lgattorneys.com
Roenan Patt - rpatt@lgattorneys.com
LEVIN GINSBURG
Attorneys For Defendant
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601-2800
Telephone: 312-368-0100
Telefax: 312-368-0111

Appendix 000079

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically on the 18th day of March 2022. Notice of this filing will be sent to the parties' counsel by operation of the Court's electronic filing system.

/s/ Mitchell S. Chaban

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRON WORKERS' MID-AMERICA PENSION PLAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| vs. | ) ) | NO. 22 C 0196 |
| VEI SOLUTIONS, INC., an Illinois corporation, | ) ) ) | JUDGE ELAINE E. BUCKLO |
| TRANQUILINO R. VENTURA, an individual, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' FIRST REQUEST TO ADMIT**

Plaintiffs, Iron Workers' Mid-America Pension Plan, *et al.*, by and through their attorneys, pursuant to Rule 36 of the Federal Rules of Civil Procedure, request written answers to the requests set forth below from Defendant, Tranquilino R. Ventura ("Ventura"), to be served upon counsel for Plaintiffs within thirty days, lest they be deemed admitted that the following statements are true. If any of the statements below are denied, Defendant should identify all facts and evidence which it contends supports its denial.

**Request No. 1:** That Exhibit A to Plaintiffs' First Request to Admit is a true and accurate copy of the Promissory Note signed by Ventura on or about August 2021 ("Note").

**RESPONSE:**

**Request No. 2:**      That Ventura and/or VEI Solutions, Inc., made payments totaling

$63,950.38 towards the balance due under the Note.

**RESPONSE:**

**Request No. 3:**      That Ventura and/or VEI Solutions, Inc., made the following payments

towards the balance due under the Note:

|                   |            |
|-------------------|------------|
| Check No. 10059   | $24,253.29 |
| Check No. 10085   | $ 7,830.61 |
| Check No. 10113   | $ 7,884.64 |
| Check No. 50424   | $ 7,939.04 |
| Check No. 50444   | $ 7,993.82 |
| Check No. 50457   | $ 8,048.98 |

**RESPONSE:**

**Request No. 4:**   That there is a balance due under the Note of $57,316.07.

**RESPONSE:**

Respectfully submitted,

*/s/ Patrick N. Ryan*
Attorney for Plaintiffs

Patrick N. Ryan
Attorney for Plaintiffs
Baum Sigman Auerbach & Neuman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL   60606-5231
Bar No.  6278364
Telephone:  (312) 216-2573
Facsimile:  (312) 236-0241
Email:  pryan@baumsigman.com
I:\MIDJ\VEI Solutions\#29758\Discovery\first req. to admit 05-18-22 pnr.kp.wpd

2

Appendix 000083

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record, hereby certifies that before the hour of 5:00 p.m. this 18th day of May 2022, he served the foregoing document (Plaintiffs' First Request to Admit) via electronic mail on the  following:

Mr. Mitchell S. Chaban
Mr. Roenan Patt
Levin Ginsburg
180 N. LaSalle Street, Suite 3200
Chicago, IL   60601
mchaban@lgattorneys.com
rpatt@lgattorneys.com

Respectfully submitted,


*/s/ Patrick N. Ryan*
Attorney for Plaintiffs



Patrick N. Ryan
Attorney for Plaintiffs
Baum Sigman Auerbach & Neuman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL   60606-5231
Bar No. 6278364
Telephone:  (312) 216-2573
Facsimile:  (312) 236-0241
Email:  pryan@baumsigman.com
I:\MIDJ\VEI Solutions\#29758\Discovery\first req. to admit 05-18-22 pnr.kp.wpd

Appendix 000084

# EXHIBIT 7

29758
JUN 2 8 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IRON WORKERS' MID-AMERICA )
PENSON PLAN, )
 )
IRON WORKERS' MID-AMERICA )
SUPPLEMENTAL MONTHLY )        CIVIL ACTION
ANNUITY (SMA FUND) )
 )        CASE NO.: 2022 C 0196
PAUL E. FLASCH, )
Its Administrative Manager, )        JUDGE ELAINE E. BUCKLO
 )
　　　　　　　　　　Plaintiffs, )
 )
　　　　vs. )
 )
VEI SOLUTIONS, INC. )
an Illinois corporation, )
 )
TRANQUILINO R. VENTURA, )
An individual, )
 )
　　　　　　　　　　Defendants. )
 )

## DEFENDANT TRANQUILINO R. VENTURA'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' FIRST SET OF REQUESTS TO ADMIT, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND INTERROGATORIES

Defendant, TRANQUILINO R. VENTURA ("Ventura"), by and through his attorneys, MITCHELL S. CHABAN, ROENAN PATT and JOSEPH A. LAPLACA of LEVIN GINSBURG, respectfully requests an extension of time to respond to Plaintiffs' First Set of Requests to Admit, Request for Production of Documents, and Interrogatories (collectively, "Discovery Requests") and in support thereof respectfully state as follows:

　　　　1.　　Plaintiffs issued the Discovery Requests including Requests to Admit attached hereto as Exhibit "1" to Ventura.

　　　　2.　　Ventura's response to the Discovery Requests including Requests to Admit is due

Page 1 of 3

Appendix 000086

June 17, 2022.

3.     Contemporaneously with this motion, counsel for Ventura is filing Motion to Withdraw as Counsel for Ventura because of irreconcilable differences.

4.     Moreover, counsel for Ventura is preparing for a two (2) week international arbitration beginning June 20, 2022.

5.     Ventura requests an additional time after entry of an Order of Withdrawal, to respond to the Discovery Requests.

6.     Ventura's request for additional time will not cause any party hereto any prejudice and is not made for any improper purpose.

7.     Based on the foregoing, this Court should grant Ventura additional time to respond to Plaintiffs' Discovery Requests.

WHEREFORE, for the above and foregoing reasons, Defendant, TRANQUILINO R. VENTURA, respectfully requests that this Court grant him additional time after entry of an Order of Withdrawal, to obtain new counsel and respond to the Discovery Requests, and grant Ventura such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

TRANQUILINO R. VENTURA,  Defendant,

By: /s/ Roenan Patt
        One of His Attorneys

Appendix 000087

Mr. Mitchell S. Chaban (6226668)
Mr. Roenan Patt (6309884)
Mr. Joseph A. LaPlaca (6336226)
LEVIN GINSBURG
Attorneys for Defendant Tranquilino R. Ventura
180 North LaSalle Street, Suite 3200 Chicago,
Illinois 60601-2800
Telephone: (312) 368-0100
Telefax: (312) 368-0111
mchaban@lgattorneys.com
rpatt@lgattorneys.com,
jlaplaca@lgattorneys.com

Appendix 000088

## CERTIFICATE OF SERVICE

I, Roenan Patt, an attorney on oath, state that I caused a true and correct copy of ,

*Defendant Tranquilino R. Ventura's Motion for Extension of Time to Respond to Plaintiff's First*

*Set of Requests to Admit, Requests for Production of Documents, and Interrogatories*, to be

filed with the Clerk of the Court on June 17, 2022 using the CM/ECF system, which will

send notification of such filing to all attorneys of record.

/s/ Roenan Patt

Appendix 000089

# Exhibit "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRON WORKERS' MID-AMERICA PENSION PLAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| vs. | ) ) | NO. 22 C 0196 |
| VEI SOLUTIONS, INC., an Illinois corporation, | ) ) ) | JUDGE ELAINE E. BUCKLO |
| TRANQUILINO R. VENTURA, an individual, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' FIRST REQUEST TO ADMIT

Plaintiffs, Iron Workers' Mid-America Pension Plan, *et al.*, by and through their attorneys, pursuant to Rule 36 of the Federal Rules of Civil Procedure, request written answers to the requests set forth below from Defendant, Tranquilino R. Ventura ("Ventura"), to be served upon counsel for Plaintiffs within thirty days, lest they be deemed admitted that the following statements are true. If any of the statements below are denied, Defendant should identify all facts and evidence which it contends supports its denial.

**Request No. 1:** That Exhibit A to Plaintiffs' First Request to Admit is a true and accurate copy of the Promissory Note signed by Ventura on or about August 2021 ("Note").

**RESPONSE:**

**Request No. 2:**     That Ventura and/or VEI Solutions, Inc., made payments totaling $63,950.38 towards the balance due under the Note.

**RESPONSE:**

**Request No. 3:**     That Ventura and/or VEI Solutions, Inc., made the following payments towards the balance due under the Note:

| | |
|---|---|
| Check No. 10059 | $24,253.29 |
| Check No. 10085 | $ 7,830.61 |
| Check No. 10113 | $ 7,884.64 |
| Check No. 50424 | $ 7,939.04 |
| Check No. 50444 | $ 7,993.82 |
| Check No. 50457 | $ 8,048.98 |

**RESPONSE:**

**Request No. 4:**   That there is a balance due under the Note of $57,316.07.

**RESPONSE:**

Respectfully submitted,

/s/ Patrick N. Ryan

Attorney for Plaintiffs

Patrick N. Ryan
Attorney for Plaintiffs
Baum Sigman Auerbach & Neuman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL  60606-5231
Bar No.  6278364
Telephone:  (312) 216-2573
Facsimile:  (312) 236-0241
Email:  pryan@baumsigman.com
I:\MIDJ\VEI Solutions\#29758\Discovery\first req. to admit 05-18-22 pnr.kp.wpd

2

Appendix 000092

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that before the hour of 5:00 p.m. this 18th day of May 2022, he served the foregoing document (Plaintiffs' First Request to Admit) via electronic mail on the following:

Mr. Mitchell S. Chaban
Mr. Roenan Patt
Levin Ginsburg
180 N. LaSalle Street, Suite 3200
Chicago, IL   60601
mchaban@lgattorneys.com
rpatt@lgattorneys.com

Respectfully submitted,


*/s/ Patrick N. Ryan*
Attorney for Plaintiffs


Patrick N. Ryan
Attorney for Plaintiffs
Baum Sigman Auerbach & Neuman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL   60606-5231
Bar No. 6278364
Telephone:  (312) 216-2573
Facsimile:  (312) 236-0241
Email:  pryan@baumsigman.com
I:\MIDJ\VEI Solutions\#29758\Discovery\first req. to admit 05-18-22 pnr.kp.wpd

# EXHIBIT A

Appendix 000094



# IRON WORKERS

2350 E. 170th Street, P. O. Box 708
Lansing, Illinois 60438
Phone 708-474-9902
Toll Free 1-800-232-8029
Fax 708-474-9982
www.iwmidamerica.com

**Mid-America Pension Plan  —  Mid-America Supplemental Monthly Annuity (SMA) Fund**

PAUL E. FLASCH, *Administrator*

LAUREL GILLUND, *Senior Pension Processor / Controller*
KELLY WILLIAMSON, *Contribution Accounting Supervisor*
SPIRIT MONAHAN, *Delinquent Account Coordinator*

## PROMISSORY NOTE

PRINCIPAL AMOUNT: $ 97,013.16

FOR VALUE RECEIVED, I, Tranquilino R. Ventura, as individual and as principal of VEI Solutions, Inc. agree that VEI Solutions, Inc. is a party to collective bargaining agreement with Iron Workers' Local Union No. 63 (Broadview, IL), which agreement requires fringe benefit contributions to various fringe benefit funds including but not limited to Mid-America Pension and Mid-America Supplemental Monthly Annuity (SMA) Funds (collectively the Funds) based upon hours worked by employees performing work covered under the respective collective bargaining agreement. Currently, VEI Solutions, Inc. is delinquent in payment to the Funds for the period of May and June 2021.

I, Tranquilino R. Ventura, as individual and as principal of VEI Solutions, Inc. promise to pay the sum of $ 97,013.16 to the Funds. I agree to pay that amount in full by July 15, 2022. **Payments by check are to be issued to the 'Mid-America Pension Fund' and mailed to Iron Workers' Mid-America Funds, P.O. Box 708, Lansing, IL 60438**. I also agree and acknowledge that as an express condition of the agreement, VEI Solutions, Inc. will make timely payment of all contributions due in all of the Funds' participating jurisdictions for July 2021 forward.

I understand that by accepting this Note, the Trustees of the Funds do not waive any rights of the Local Union(s) to collect unpaid contributions. By executing this Note, I agree that the above amount is due and owing to the Funds under the applicable collective bargaining agreement. To secure the payment of said amount, I agree to be personally liable for any unpaid amounts. If a lawsuit is filed against me or VEI Solutions, Inc. to collect any unpaid amounts on this Note, I do hereby waive any and all statutory and contractual defenses except the defense of payment.

AUG - 4 2021

Tranquilino R. Ventura, individually and as principal of
VEI Solutions, Inc.

*"Working exclusively for Union Iron Workers and their Families"*

Appendix 000095

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.6.3**
**Eastern Division**

Iron Workers' Mid−America Pension Plan, et al.

Plaintiff,

v.

Case No.: 1:22−cv−00196
Honorable Elaine E. Bucklo

VEI Solutions, Inc., et al.

Defendant.

---

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, June 27, 2022:

MINUTE entry before the Honorable Elaine E. Bucklo: Motion for extension of time to respond to requests to admit [40] is granted. Motion to withdraw as attorney [41] is granted; Appearances of attorneys Mitchell S. Chaban and Roenan Patt terminated. Defendant has 30 days to obtain new counsel. Status hearing previously set for 8/8/2022 to stand (for tracking purposes, no appearances required), as well as status report due date of 7/31/2022. Parties to note Judge Bucklo's motion call procedures posted on her page at www.ilnd.uscourts.gov. Mailed notice (reg)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Appendix 000097

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRON WORKERS' MID-AMERICA            )
PENSION PLAN, et al.,                )
                                     )
                Plaintiffs,          )      CIVIL ACTION
                                     )
        vs.                          )      NO. 22 C 0196
                                     )
VEI SOLUTIONS, INC.,                 )      JUDGE ELAINE E. BUCKLO
an Illinois corporation,             )
                                     )
TRANQUILINO R. VENTURA,              )
an individual,                       )
                                     )
                Defendants.          )

## JUDGMENT ORDER

This matter coming on to be heard upon the Motion of Plaintiffs, by their counsel, it appearing to the Court that the Defendant, VEI SOLUTIONS, INC., an Illinois corporation, having been regularly served with process and having failed to appear, plead or otherwise defend, and default of said Defendant having been taken, the Court, first being fully advised in the premises and upon further evidence submitted herewith, FINDS:

1.      It has jurisdiction of the subject matter herein and of the parties hereto.

2.      Defendant is bound by the terms of the collective bargaining agreement referred to in Plaintiffs' Complaint and Plaintiffs' First Amended Complaint.

3.      Defendant is obligated to report and pay contributions to each of the Plaintiff Funds on behalf of its bargaining unit employees in accordance with the collective bargaining agreement.

4.      Defendant is bound by all the terms and conditions set forth in the Agreements and Declarations of Trust governing the Plaintiff Funds.

Appendix 000099

5.    Defendant has submitted monthly contribution reports to the Plaintiffs identifying employees of the Defendants who performed work covered by the collective bargaining agreement, and the number of hours worked by or paid to those employees for the months of May 2021, June 2021, November 2021 and December 2021.  Said monthly contribution reports establish that Defendant owes the Plaintiffs the amounts set forth below:

| Fund | Contributions | Liquidated Damages | Interest |
|------|---------------|--------------------|----------|
| Pension Fund | $157,414.11 | $9,548.20 | $4,376.07 |
| SMA Fund | $ 34,620.84 | $2,148.48 | $  984.54 |

6.    Pursuant to the Trust Agreements, a liquidated damages surcharge has been assessed against the Defendant in the amount of one and one-half (1.50%) percent per month of all contributions due and unpaid and all contributions which were paid late, for the time period February 2021 through October 2021, in the amounts set forth below:

| Fund | Liquidated Damages |
|------|--------------------|
| Pension Fund | $3,714.32 |
| SMA Fund | $  858.65 |

7.    Further, Plaintiffs have assessed interest against the Defendant on contributions due and unpaid and all contributions which were paid late, for the time period November 2020 through October 2021, in the amounts set forth below:

| Fund | Interest |
|------|----------|
| Pension Fund | $1,969.67 |
| SMA Fund | $  457.33 |

8.    Plaintiffs are entitled to audit the payroll books and records of Defendant, VEI Solutions, Inc., to verify the accuracy of the monthly reports referred to herein and to determine what additional amounts may be due and owing to Plaintiffs.

2

9.      Defendant is in violation of its obligation to submit all monthly contribution reports for the months of January 2022 to the present.

10.     Defendant has failed to timely pay all contributions required to be made to the Plaintiff Funds.  Accordingly, as provided in the Agreements and Declarations of Trust governing the respective Funds, 29 U.S.C. §1132(g)(2) and 28 U.S.C. §1961, Plaintiffs are entitled to recover:

(a)      liquidated damages and interest on all contributions paid late or remaining unpaid;

(b)      the cost of auditing the payroll books and records of Defendant;

(c)      the costs and expenses of the Trustees, including their reasonable attorneys' fees;

(d)      post-judgment interest; and

(e)      costs and attorneys' fees incurred in executing on, or otherwise collecting, this judgment.

11.     Plaintiffs have incurred costs totaling $622.00 and reasonable attorneys' fees totaling $922.00.

12.     There is no just cause for delay in the entry of a Judgment Order as to the sum of $217,636.21 owed to the Plaintiffs from Defendant, VEI Solutions, Inc.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

A.      That Plaintiffs recover from the Defendant, VEI SOLUTIONS, INC., an Illinois corporation, the sum of $192,034.95 for contributions, $11,696.68 for liquidated damages, and $5,360.61 for interest, for a total sum of $209,092.24.

B.      That Plaintiffs recover from the Defendant, VEI SOLUTIONS, INC., an Illinois corporation, the sum of $622.00 for their costs and $922.00 as and for Plaintiffs' just and reasonable attorneys' fees.

3

C.      That Plaintiffs recover from the Defendant, VEI SOLUTIONS, INC., an Illinois corporation, the total sum of **$217,636.21**, plus post-judgment interest on said amount at the rate required by 28 U.S.C. §1961.

D.      Defendant, VEI SOLUTIONS, INC., an Illinois corporation, is ordered to submit its completed monthly remittance forms for the months of January 2022 to the present within 14 days of the date of this order and to timely submit monthly remittance forms that come due for the next six (6) months; and Plaintiffs are given leave to file a motion to amend this Judgment Order as needed upon receipt of the remittance forms.

E.      That Plaintiffs are awarded their costs and attorneys' fees to execute on, or otherwise collect this judgment.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: _____3/24/2022_____

Patrick N. Ryan
Attorney for the Plaintiffs
BAUM SIGMAN AUERBACH & NEUMAN, LTD.
200 West Adams Street, Suite 2200
Chicago, IL  60606-5231
Bar No.: 6278364
Telephone:  (312) 216-2573
Facsimile: (312) 236-0241
E-Mail: pryan@baumsigman.com

I:\MIDJ\VEI Solutions\#29758\judgment order.pnr.df.wpd

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that he caused a copy of the foregoing document (Judgment Order) to be served upon:

Mr. Tranquilino R. Ventura, Registered Agent
VEI Solutions, Inc.
1800 Howard Street, Suite A
Elk Grove Village, IL   60007-2482

by U.S. Mail on or before the hour of 5:00 p.m. this 18th day of March 2022.

I further certify that on or before the hour of 5:00 p.m., this 18th day of March 2022, I caused a copy of the foregoing document to be served by electronic mail upon:

Mr. Mitchell S. Chaban
Mr. Roenan Patt
Levin Ginsburg
180 N. LaSalle Street, Suite 3200
Chicago, IL   60601
mchaban@lgattorneys.com
rpatt@lgattorneys.com

/s/   Patrick N. Ryan

Patrick N. Ryan
Attorney for the Plaintiffs
BAUM SIGMAN AUERBACH & NEUMAN, LTD.
200 West Adams Street, Suite 2200
Chicago, IL  60606-5231
Bar No.: 6278364
Telephone:  (312) 216-2573
Facsimile: (312) 236-0241
E-Mail: pryan@baumsigman.com

I:\MIDJ\VEI Solutions\#29758\judgment order.pnr.df.wpd

# EXHIBIT 10

**ilsos.gov is now ilsos.gov**



# Corporation/LLC Search/Certificate of Good Standing

## Corporation File Detail Report

| | |
|---|---|
| File Number | 68506271 |
| Entity Name | VEI SOLUTIONS, INC. |
| Status | |
| NOT GOOD STANDING | |

### Entity Information

Entity Type
CORPORATION

Type of Corp
DOMESTIC BCA

Incorporation Date (Domestic)
Thursday, 3 May 2012

State
ILLINOIS

Duration Date
PERPETUAL

### Agent Information

Appendix 000105

Name
TRANQUILINO R VENTURA

Address
1800 HOWARD ST STE A
ELK GROVE VILLAGE , IL 60007

Change Date
Wednesday, 6 January 2021

## Annual Report

Filing Date
00/00/0000

For Year
2022

## Officers

President
Name & Address
TRANQUILINO R VENTURA 1800 HOWARD ST STE A ELK GROVE VILLAG

Secretary
Name & Address
TRANQUILINO R VENTURA SAME

## Assumed Name

INACTIVE
VEI CORPORATION

## Old Corp Name

10/26/2015
VEI SUPPLY, INC.

Appendix 000106

Case: 1:22-cv-00196 Document #: 49-1 Filed: 08/31/22 Page 108 of 108 PageID #:293

Return to Search

File Annual Report

This information was printed from www.ilsos.gov, the official website of the Illinois Secretary of State's Office.      Wed Aug 24 2022

Appendix 000107